IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EUFRONIO LOMIBAO, Individually and for Others Similarly Situated, | Case No. _____ |
| Plaintiff, | ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT |
| v. | |
| AGC BIOLOGICS, INC., a Washington for-profit corporation, | Jury Trial Demanded |
| Defendant. | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Eufronio Lomibao (Lomibao) brings this class and collective action to recover unpaid wages and other damages from AGC Biologics, Inc. (AGC).

2.     AGC employed Lomibao as one of its Hourly Employees (defined below).

3.     AGC pays Lomibao and the other Hourly Employees on an hourly basis.

4.     Lomibao and the other Hourly Employees regularly work more than 40 hours a workweek.

5.     But AGC does not pay them for all their hours worked.

6.     Instead, before and after their shifts, AGC requires Lomibao and the other Hourly Employees to attend operations meetings, record production notes, and review standard operating

ORIGINAL COMPLAINT - 1

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

procedures (SOPs) "off the clock" and without compensation (AGC's "pre/post shift off the clock policy").

7.    And AGC requires Lomibao and the other Hourly Employees to record they took a 30-minute "meal period," regardless of whether they actually received a *bona fide*, uninterrupted meal period (AGC's "meal deduction policy").

8.    AGC does not pay them for this time.

9.    But Lomibao and the other Hourly Employees do not actually receive *bona fide* meal periods.

10.   They likewise do not receive *bona fide* rest periods.

11.   Instead, AGC requires Lomibao and the other Hourly Employees to remain on duty and perform their regular job duties throughout their shifts and/or subjects them to interruptions during attempted "meal periods" and "rest periods."

12.   AGC's failure to provide Lomibao and the other Hourly Employees with *bona fide* meal and rest periods violates the Washington Industrial Welfare Act ("WIWA") and related Washington Dept. of Labor & Industries ("DOLI") regulations.

13.   AGC also pays non-discretionary bonuses and shift differential payments that it fails to include in Lomibao's and the other Hourly Employees' regular rates of pay for overtime purposes (AGC's "bonus pay scheme").

14.   AGC's pre/post shift off the clock policy, bonus pay scheme, and meal deduction policy violate the Fair Labor Standards Act ("FLSA") and the Washington Minimum Wage Act ("WMWA") by depriving Lomibao and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

15.   Likewise, as a result of its pre/post shift off the clock policy, bonus pay scheme, and meal deduction policy, AGC willfully withholds earned wages from Lomibao and the other Hourly Employees in violation of the Washington Wage Rebate Act ("WWRA").

ORIGINAL COMPLAINT - 2

JURISDICTION & VENUE

16.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

17.    This Court also has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.    This Court has general personal jurisdiction over AGC because AGC is a Washington corporation and maintains its principal place of business in Washington.

19.    Venue is proper because AGC maintains its principal place of business in Bothell, Washington, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

PARTIES

20.    AGC employed Lomibao as an in-plant quality assurance associate from approximately December 2022 until May 2024.

21.    Throughout his employment, AGC classified Lomibao as non-exempt and paid him by the hour.

22.    And AGC subjected Lomibao to its pre/post shift off the clock policy, bonus pay scheme, and meal deduction policy.

23.    Lomibao's written consent is attached as Exhibit 1.

24.    Lomibao brings this class and collective action on behalf of himself and other similarly situated hourly AGC employees.

25.    The FLSA Collective of similarly situated employees is defined as:

> All hourly employees who worked for AGC at any time during the past 3 years through final resolution of this action (the "FLSA Collective Members").

26.    Lomibao also seeks to represent such a class under Washington law pursuant to FED. R. CIV. P. 23.

27.    The Washington Class of similarly situated employees is defined as:

ORIGINAL COMPLAINT - 3

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

All hourly employees who worked for AGC in Washington at any time in the past 3 years through final resolution of this action (the "Washington Class Members").

28.     The FLSA Collective Members and the Washington Class Members are collectively referred to as the "Hourly Employees."

29.     AGC is a Washington corporation headquartered in Bothell, Washington.

30.     AGC may be served through its registered agent: C T Corporation System, 711 Capitol Way S., Ste. 204, Olympia, Washington 98501.

### FLSA COVERAGE

31.     At all relevant times, AGC was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

32.     At all relevant times, AGC was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33.     At all relevant times, AGC was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

34.     At all relevant times, AGC has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

35.     At all relevant times, Lomibao and the other Hourly Employees were AGC's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

36.     At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

FACTS

37.    AGC "provides pharmaceutical development and manufacturing services for protein-based biologics and cell and gene therapies"[1]

38.    AGC has "seven facilities and teams of scientists across three continents, we have the resources and the available capacity you need to accelerate your race to GMP."[2]

39.    To meet its business objectives, AGC hires employees, like Lomibao and the other Hourly Employees.

40.    AGC uniformly classifies Lomibao and the other Hourly Employees as non-exempt and pays them by the hour.

41.    While exact job titles, duties, and locations may differ somewhat, Lomibao and the other Hourly Employees are all subject to AGC's same or similar policies—its pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and missed rest periods—for similar work.

42.    For example, AGC employed Lomibao as an in-plant quality assurance associate in AGC's Bothell, Washington production facility from approximately December 2022 until May 2024.

43.    As an in-plant quality assurance associate, Lomibao's primary responsibilities included monitoring the manufacture of prescription medication to ensure that proper procedures were followed, guaranteeing manufacturing equipment remained in good working order, documenting these determinations, and confirming the manufactured medication complied with required specifications.

44.    AGC agreed to pay Lomibao approximately $35.70 an hour for the first 40 hours each workweek and time and a half overtime (based on total remuneration) for all hours worked in excess of 40 a workweek.

45.    Lomibao reported his "on the clock" hours to AGC through its uniform timekeeping system.

---

[1] https://www.agcbio.com/about (last visited February 5, 2025).
[2] *Id.*

ORIGINAL COMPLAINT - 5

46.     AGC's records reflect the hours Lomibao worked each week "on the clock."

47.     Throughout his employment, Lomibao typically worked 8 to 12 hours a day for 5 to 7 days a week (40 to 84 hours a workweek) "on the clock."

48.     Likewise, the other Hourly Employees typically work 8 to 12 hours a day for 5 to 7 days a week (40 to 84 hours a workweek) "on the clock."

49.     And each pay period, AGC pays Lomibao and the other Hourly Employees based on common systems and methods it selects and controls.

50.     AGC requires Lomibao and its other Hourly Employees to abide by common work, time, pay, meal period, rest period, and overtime policies and procedures.

51.     But AGC does not pay Lomibao and the other Hourly Employees for all their hours worked, including overtime hours.

52.     Instead, AGC imposes its pre/post shift off the clock policy on Lomibao and the other Hourly Employees.

53.     Specifically, AGC requires these employees to perform their normal job duties, such as attend operations meetings, record production notes, and review SOPs "off the clock" and without compensation.

54.     This work takes Lomibao and the other Hourly Employees approximately 30 minutes to 2 hours each workday.

55.     Lomibao and the other Hourly Employees could not perform their job duties manufacturing prescription drugs in accordance with AGC' policies, procedures, and expectations, and the Food and Drug Administration's requirements, without performing these tasks.

56.     Attending operations meetings, recording production notes, and reviewing SOPs are therefore integral and indispensable work duties for Lomibao and the other Hourly Employees.

57.     But under its pre/post shift off the clock policy, AGC did not compensate Lomibao and the other Hourly Employees for the same.

58.     And AGC subjects Lomibao and the other Hourly Employees to its meal deduction policy, requiring them to work "off the clock" during so called "meal periods."

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

59.     Specifically, AGC requires Lomibao and the other Hourly Employees to "clock out" for 30 minutes a day to record they took a "meal period."

60.     AGC requires Lomibao and the other Hourly Employees to record they took a "meal period" regardless of whether they actually receive a *bona fide* meal period.

61.     If Lomibao and the other Hourly Employees do not "clock out" to record they took a "meal period," AGC disciplines them, threatens to discipline them, and/or manually deducts 30 minutes from their recorded work time.

62.     But Lomibao and the other Hourly Employees do not actually receive *bona fide* uninterrupted meal periods.

63.     And Lomibao and the other Hourly Employees do not actually receive *bona fide* uninterrupted rest periods.

64.     Instead, AGC requires Lomibao and the other Hourly Employees to remain on duty throughout their shifts, including during their unpaid "meal periods" and "rest periods," including to complete stages of the medication manufacturing process called "harvests," which require 5+ hours of continuous work without a break and "downstreaming," which can require 10 hours of continuous work.

65.     And AGC subjects Lomibao and the other Hourly Employees to work interruptions during their unpaid "meal periods" and "rest periods."

66.     Because of these policies and interruptions, Lomibao and the other Hourly Employees are not free to engage in personal activities during their unpaid "meal periods" and "rest periods."

67.     In other words, Lomibao and the other Hourly Employees are not relieved of all their duties during their unpaid "meal periods" and "rest periods."

68.     Rather, during their unpaid "meal periods" Lomibao and the other Hourly Employees are forced to remain on duty and perform their regular job duties and responsibilities "off the clock."

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

69.     Lomibao and the other Hourly Employees are likewise forced to remain on duty and their regular job duties and responsibilities during their "rest periods."

70.     Thus, Lomibao and the other Hourly Employees routinely spend their unpaid "meal periods" performing work "off the clock" for AGC's—not their own—predominant benefit.

71.     This unpaid "off the clock" work time is compensable under the FLSA and Washington law because AGC knew, or should have known: (1) Lomibao and the other Hourly Employees were performing unpaid work during their "meal periods"; (2) they were interrupted or subject to interruptions with work duties during any attempted "meal period"; (3) they were not completely relieved of all duties during their unpaid "meal periods"; (4) they entirely skipped their "meal periods" due to work demands; (5) their unpaid "meal periods" were less than 30 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid "meal periods" because of constant work interruptions; (7) they remained on AGC's premises and/or under AGC's supervision during their unpaid "meal periods"; and/or (8) they spent their unpaid "meal periods" performing their regular job duties for AGC's predominant benefit.

72.     AGC fails to exercise its duty to ensure its Hourly Employees are not performing work "off the clock."

73.     And AGC knows, should know, or recklessly disregards whether its Hourly Employees routinely perform work "off the clock."

74.     Indeed, Lomibao and other Hourly Employees complained to their supervisors, HR, and/or AGC's management about being forced to work "off the clock" during their unpaid "meal periods" and before and after their shifts.

75.     Thus, AGC requested, suffered, permitted, or allowed Lomibao and the other Hourly Employees to work "off the clock" during their unpaid "meal periods."

76.     AGC's failure to provide Lomibao and the other Hourly Employees with *bona fide*, duty-free meal and rest periods violates the WIWA and related Washington DOLI regulations.

77.     Thus, despite accepting the benefits, AGC does not pay Lomibao and the other Hourly Employees for the compensable work they perform "off the clock."

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

78.     And AGC subjects Lomibao and the other Hourly Employees to its bonus pay scheme.

79.     Specifically, AGC paid Lomibao and the other Hourly Employees non-discretionary bonuses, including retention and production bonuses, as well as shift differentials and "business expense reimbursements" that it failed to include in their regular rates of pay for overtime purposes.

80.     For example, during the pay period ending April 13, 2024, AGC paid Lomibao $317.73 labeled "Swing Shift Differential" at a rate of $3.57 and hour (10% of his $35.70 hourly base rate of pay):

| Description | Dates | Hours | Rate | Amount | YTD Hours | YTD Amount |
|---|---|---|---|---|---|---|
| Reward Payment | | | 0 | | 0 | 35.54 |
| Call Response | | | 0 | | 6 | 315.00 |
| Employer Paid EE F | | | 0 | | 0 | 31.43 |
| Employer Paid EE M | | | 0 | | 0 | 15.30 |
| Holiday Pay | | | 0 | | 16 | 560.00 |
| Holiday Worked | | | 0 | | 25.5 | 1,338.75 |
| On Call Differential | | | 0 | | 1 | 52.50 |
| Overtime | 03/31/2024 - 04/06/2024 | 2 | 53.55 | 107.10 | | |
| Overtime | 04/07/2024 - 04/13/2024 | 3 | 53.55 | 160.65 | 70 | 3,680.26 |
| Regular Pay | 03/31/2024 - 04/06/2024 | 40 | 35.7 | 1,428.00 | | |
| Regular Pay | 04/07/2024 - 04/13/2024 | 40 | 35.7 | 1,428.00 | 543.75 | 19,087.25 |
| Swing Shift Differen | 03/31/2024 - 04/06/2024 | 44 | 35.7 | 157.08 | | |
| Swing Shift Differen | 04/07/2024 - 04/13/2024 | 45 | 35.7 | 160.65 | 131.5 | 2,452.74 |
| Vacation | | | 0 | | 80 | 2,800.00 |
| Earnings | | | | 3,441.48 | | 30,368.77 |

81.     And during the pay period ending March 18, 2023, AGC paid Lomibao a bonus of $2,467.19 that it did not include in his regular rate of pay (AGC recorded his bonus on a different paystub than his regular pay):

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Bonus | | | 2,467.19 | 2,467.19 |
| Er Paid Ee Fli | | | 3.69 | 63.68 |
| Er Paid Ee Mli | | | 1.63 | 28.09 |
| Call Response | | | | 101.67 |
| Floating Holida | | | | 813.36 |
| Fring Ben Updt | | | | 35.54 |
| Holiday Worked | | | | 3,189.90 |
| Oncal | | | | 50.84 |
| Sick | | | | 626.97 |
| Swing Shift | | | | 3,511.00 |
| **Gross Pay** | | | **$2,472.51** | 42,703.46 |
| Earnings | rate | hours | this period | year to date |
| Regular | 33.8900 | 80.00 | 2,711.20 | |
| Overtime | 50.8350 | 58.00 | 2,948.43 | |
| Call Response | 50.8350 | 2.00 | 101.67 | 101.67 |
| Er Paid Ee Fli | | | 9.56 | 59.99 |
| Er Paid Ee Mli | | | 4.22 | 26.46 |
| LTE | | | 7.93 | |
| Oncal | 50.8400 | 1.00 | 50.84 | 50.84 |
| Swing Shift | | | 581.21 | 3,511.00 |

ORIGINAL COMPLAINT - 9

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

82.    Finally, AGC paid Lomibao retention bonuses that compensated him over the course of months:

Dear Eufronio,

In 2021, AGC Biologics rolled out a Retention Bonus Plan.  You received the first installment of that Bonus Plan last year, and due to your continued employment with AGC Biologics you are scheduled to receive the 2nd portion of that earned bonus on June 24, 2022 in the amount of $6000.

83.    Thus, under its pre/post shift off the clock policy, bonus pay scheme, and meal deduction policy, combined with denied rest breaks, AGC fails to pay Lomibao and its other Hourly Employees overtime for all hours worked over 40 in a workweek (including those worked "off the clock"), in willful violation of the FLSA and WMWA.

84.    Likewise, under its pre/post shift off the clock policy, bonus pay scheme, and meal deduction policy, AGC willfully withheld earned wages from Lomibao and its other Hourly Employees for work they performed "off the clock," in violation of the WWRA.

CLASS & COLLECTIVE ACTION ALLEGATIONS

85.    Like Lomibao, the other Hourly Employees are victimized by AGC's pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and denied rest periods.

86.    Other Hourly Employees worked with Lomibao and indicated they were paid in the same manner, performed similar work, and were subject to AGC's pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and denied rest periods.

87.    Based on his experience, Lomibao is aware AGC's pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and denied rest periods were imposed on other Hourly Employees.

88.    The putative class of Hourly Employees includes more than 40 members.

89.    Thus, the putative class of Hourly Employees is so numerous that joinder of all class members in one lawsuit is not practicable.

90.    The Hourly Employees are similarly situated in the most relevant respects.

ORIGINAL COMPLAINT - 10

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

91.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages, overtime wages, and *bona fide* meal and rest periods.

92.     The only relevant inquiry is whether the Hourly Employees were subject to AGC's pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and/or denial of rest periods (which they were).

93.     Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

94.     Rather, AGC's pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and denial of rest periods render Lomibao and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages, overtime wages, and *bona fide* meal and rest periods.

95.     AGC's records reflect the number of hours the Hourly Employees worked each week "on the clock."

96.     AGC's records further reflect it required the Hourly Employees to "clock out" for 30 minutes a day for so-called "meal periods."

97.     The back wages owed to Lomibao and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

98.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to AGC's records, and there is no detraction from the common nucleus of liability facts.

99.     Therefore, the issue of damages does not preclude class or collective treatment.

100.     Lomibao's experiences are therefore typical of the experiences of the other Hourly Employees.

101.     Lomibao has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

102.    Like each Hourly Employee, Lomibao has an interest in obtaining the unpaid wages owed under federal and Washington law.

103.    Lomibao and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

104.    Lomibao retained counsel with significant experience in litigating complex class and collective actions.

105.    A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

106.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and AGC will reap the unjust benefits of violating the FLSA and Washington law.

107.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

108.    Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and AGC.

109.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency as well as parity among the Hourly Employees' claims.

110.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

111.    Among the common questions of law and fact are:

(a)    Whether AGC engaged in a policy and practice of requiring its Hourly Employees to perform their typical job duties, such as attending meetings or documenting manufacturing procedures/specifications "off the clock" and without compensation;

(b)    Whether AGC engaged in a policy and practice of requiring its Hourly Employees to "clock out" for 30 minutes a day to for a "meal period," regardless of whether they received a *bona fide* meal period;

ORIGINAL COMPLAINT - 12

(c)      Whether AGC knew, or had reason to know, it requested, suffered, permitted, or allowed its Hourly Employees to work "off the clock";

(d)      Whether AGC paid the Hourly Employees non-discretionary bonuses that it did not include in their regular rates of pay;

(e)      Whether AGC failed to provide its Hourly Employees with *bona fide* meal and rest periods in violation of the WIWA and related Washington DOLI regulations;

(f)      Whether AGC failed to pay its Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 40 in a week in violation of the FLSA and WMWA;

(g)      Whether AGC willfully withheld earned wages from its Hourly Employees in violation of the WWRA;

(h)      Whether AGC's decision not to pay its Hourly Employees overtime wages at the required rate for all overtime hours worked was made in good faith;

(i)      Whether AGC's decision to withhold earned wages from its Hourly Employees was made in good faith; and

(j)      Whether AGC's violations were willful.

112.      AGC's pre/post shift off the clock policy, bonus pay scheme, meal deduction policy, and missed rest periods deprived Lomibao and the other Hourly Employees of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek, which they are owed under federal and Washington law.

113.      There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

ORIGINAL COMPLAINT - 13

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

114.    The similarly situated Hourly Employees are known to AGC, are readily identifiable, and can be located through AGC's business and personnel records.

### AGC's Violations Were Willful

115.    AGC knew it was subject to the FLSA's and WMWA's overtime provisions.

116.    AGC knew the FLSA and WMWA required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

117.    AGC knew it was subject to the WWRA.

118.    AGC knew the WWRA prohibited it from willfully withholding earned wages from employees, including the Hourly Employees.

119.    AGC knew each Hourly Employee worked more than 40 hours in at least one workweek during relevant period(s).

120.    AGC knew its Hourly Employees were non-exempt employees entitled to overtime.

121.    AGC knew it paid its Hourly Employees by the hour.

122.    AGC knew it did not pay its Hourly Employees for all compensable hours worked, including overtime hours, under its pre/post shift of the clock policy and meal deduction policy.

123.    Thus, AGC knew it requested, suffered, permitted, or allowed its Hourly Employees to work "off the clock" before and after their shifts.

124.    AGC knew it was subject to the WIWA and the Washington DOLI regulations.

125.    AGC knew the WIWA and the Washington DOLI regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free 10-minute rest period for every 4 hours worked.

126.    AGC knew the WIWA and the Washington DOLI regulations required it to provide employees, including the Hourly Employees, a *bona fide*, duty-free, and uninterrupted 30-minute meal period for every 5 hours worked.

127.    AGC knew its Hourly Employees did not waive their meal periods.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

128.     Nonetheless, AGC failed to provide its Hourly Employees with *bona fide*, duty-free meal and rest periods.

129.     AGC knew the FLSA and Washington law required it to pay its employees, including the Hourly Employees, for all hours they performed compensable work.

130.     AGC knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" without compensation.

131.     AGC knew its Hourly Employees did not actually receive *bona fide* meal periods.

132.     AGC knew its Hourly Employees regularly worked "off the clock" during their unpaid "meal periods."

133.     AGC knew its Hourly Employees regularly spent their unpaid "meal periods" performing their regular job duties "off the clock" for AGC's predominant benefit.

134.     Thus, AGC knew it requested, suffered, permitted, or allowed its Hourly Employees to work "off the clock" during their so-called "meal periods."

135.     And AGC knew that it paid the Hourly Employees non-discretionary bonuses, shift differentials, and "expense reimbursements" that were simply additional compensation for working.

136.     And AGC knew it was required to, but did not, include this compensation in their regular rates of pay for overtime purposes.

137.     AGC knew, should have known, or recklessly disregarded whether its Hourly Employees performed compensable work "off the clock."

138.     And, AGC did not pay its Hourly Employees for the compensable work they performed "off the clock" during their "meal periods" and before and after their shifts.

139.     AGC knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Washington law.

140.     Indeed, Lomibao and the Hourly Employees complained about being forced to work "off the clock" and missed meal and rest periods to AGC supervisors, management and/or HR.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

141.     AGC knowingly, willfully, and/or in reckless disregard of applicable federal and Washington law carried out employment policies that systematically deprived its Hourly Employees of *bona fide* meal and rest periods, earned wages, and premium overtime pay at the required rate.

### COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

142.     Lomibao brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

143.     AGC violated, and is violating, the FLSA by employing non-exempt employees (Lomibao and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all their hours worked in excess of 40 a workweek, including those worked "off the clock."

144.     AGC's unlawful conduct harmed Lomibao and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

145.     Accordingly, AGC owes Lomibao and the other FLSA Collective Members the difference between the wages actually paid and the proper overtime wages earned.

146.     Because AGC knew, or showed reckless disregard for whether, its pre/post shift off the clock policy, bonus pay scheme, and meal deduction policy violated the FLSA, AGC owes these wages for at least the past 3 years.

147.     AGC is also liable to Lomibao and the other FLSA Collective Members for an additional amount equal to all their unpaid wages as liquidated damages.

148.     Finally, Lomibao and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

### COUNT II
### FAILURE TO PAY OVERTIME UNDER THE WMWA
### (WASHINGTON CLASS)

149.     Lomibao brings his WMWA claim as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

ORIGINAL COMPLAINT - 16

1    150.    AGC conduct violates the WMWA. RCW 49.46, *et seq.*

2    151.    At all relevant times, AGC was subject to the WMWA because AGC was (and is) an

3    "employer" within the meaning of the WMWA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

4    152.    At all relevant times, AGC employed Lomibao and the other Washington Class

5    Members as its covered "employees" within the meaning of the WMWA. *See* RCW 49.46.010(3); *see*

6    *also* RCW 49.48.082(5)(a).

7    153.    The WMWA requires employers, like AGC, to pay non-exempt employees,

8    including Lomibao and the other Washington Class Members, overtime wages at rates not less than

9    1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a

10    workweek. RCW 49.46.130 *and* RCW 49.46.090.

11    154.    Lomibao and the other Washington Class Members are entitled to overtime pay

12    under the WMWA.

13    155.    AGC violated, and is violating, the WMWA by failing to pay non-exempt employees

14    (Lomibao and the other Washington Class Members) overtime wages at rates not less than 1.5 times

15    their regular rates of pay for all hours worked after 40 in a workweek, including those worked "off

16    the clock." *See* RCW 49.46.130; *see also* RCW 49.46.090.

17    156.    AGC's unlawful conduct harmed Lomibao and the other Washington Class

18    Members by depriving them of the overtime wages they are owed under Washington law.

19    157.    Accordingly, AGC owes Lomibao and the other Washington Class Members the

20    difference between the wages paid and the proper overtime wages earned (RCW 49.46.090) plus

21    pre-judgment interest at a rate of 12% per annum (RCW 19.52.020).

22    158.    Finally, Lomibao and the other Washington Class Members are also entitled to

23    recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.46.30.

24

25

26

27

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

COUNT III
WILLFULLY WITHHOLDING EARNED WAGES UNDER THE WWRA
(WASHINGTON CLASS)

159.    Lomibao brings his WWRA claim as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

160.    AGC conduct violates the WWRA (RCW 49.52, *et seq.*).

161.    At all relevant times, AGC was subject to the WWRA because AGC was (and is) an "employer" within the meaning of the WWRA. *See* RCW 49.46.010(4); *see also* RCW 49.48.082(6).

162.    At all relevant times, AGC employed Lomibao and the other Washington Class Members as covered "employees" within the meaning of the WWRA. *See* RCW 49.12.005(4); *see also* RCW 49.48.082(5)(b).

163.    The WWRA prohibits employers, like AGC, from depriving employees, including Lomibao and the other Washington Class Members, of "any part of his or her wages" and from "pay[ing] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract." RCW 49.52.050.

164.    AGC violated, and is violating, the WWRA by willfully withholding earned wages from Lomibao and the other Washington Class Members for the hours they worked during their on-duty "meal periods," which AGC was obligated to pay under Washington law (*e.g.*, the WMWA). *See* RCW 49.52.050.

165.    AGC also violated, and is violating, the WWRA by willfully withholding earned overtime wages from Lomibao and the other Washington Class Members, which federal and Washington law (*i.e.*, the FLSA and the WMWA) obligated AGC to pay at rates not less than 1.5 times their regular rates of pay. *See* RCW 49.52.050.

166.    AGC's unlawful conduct harmed Lomibao and the other Washington Class Members by willfully withholding earned wages (including earned overtime wages at the proper premium rate) from these employees which they are owed under Washington law.

ORIGINAL COMPLAINT - 18

167.    Accordingly, AGC owes Lomibao and the other Washington Class Members their willfully withheld earned wages plus exemplary damages in an amount equal to 2 times their willfully withheld wages (RCW 49.52.070).

168.    Finally, Lomibao and the other Washington Class Members are also entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* RCW 49.52.070.

COUNT IV
FAILURE TO PROVIDE *BONA FIDE* MEAL AND REST PERIODS UNDER THE WIWA
(WASHINGTON CLASS)

169.    Lomibao brings his meal and rest period claims under the WIWA and related Washington DOLI regulations as a class action on behalf of himself and the other Washington Class Members pursuant to FED. R. CIV. P. 23.

170.    AGC's conduct violates the WIWA's (and the related DOLI regulations') meal and rest period requirements (RW 49.12, *et seq.*; WAC 296-126-092).

171.    At all relevant times, AGC was subject to the WIWA and related DOLI regulations because AGC was (and is) an "employer" within the meaning of the WIWA and the DOLI regulations. *See* RCW 49.12.005(3); WAC 296-126-002(1).

172.    At all relevant times, AGC employed Lomibao and the other Washington Class Members as covered "employees" within the meaning of the WIWA and the Washington DOLI regulations. *See* RCW 49.12.005(4); WAC 296-126-002(2).

173.    The WIWA prohibits employers, like AGC, from employing employees, including Lomibao and the other Washington Class Members, under conditions of labor detrimental to their health. RCW 49.12.020.

174.    The DOLI regulations require employers, like AGC, to provide employees, including Lomibao and the other Washington Class Members, meal periods of at least 30 minutes which commence no less than 2 hours nor more than 5 hours from the beginning of the employees' shift. WAC 296-126-092(1).

ORIGINAL COMPLAINT - 19

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

175.    The DOLI regulations further mandate that meal periods shall be paid when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. WAC 296-126-092(1).

176.    The DOLI regulations also require employers, like AGC, to provide employees, including Lomibao and the other Washington Class Members, rest periods of at least 10 minutes for every 4 hours of working time. WAC 296-126-092(4).

177.    The DOLI regulations further prohibit employers, like AGC, from requiring employees, including Lomibao and the other Washington Class Members, to work more than 3 hours without a rest period. WAC 296-126-092(4).

178.    Washington law also requires employers, like AGC, to compensate employees, including Lomibao and the other Washington Class Members, for missed meal and rest periods. *See, e.g., Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 517-19, 415 P.3d 224 (2018); *Pellino v. Brinks Inc.*, 164 Wn. App. 668, 690-93, 267 P.3d 383 (2011).

179.    Throughout the relevant period, AGC expected and required Lomibao and the other Washington Class Members to remain on duty and perform compensable work throughout their shifts, including during their meal and rest periods.

180.    Lomibao and the other Washington Class Members were not relieved of all duties during their attempted meal and rest periods but instead were subject to constant work interruptions.

181.    Thus, AGC violated, and is violating, the WIWA and related DOLI regulations by failing to provide Lomibao and the other Washington Class Members *bona fide* meal and rest periods. *See* RCW 49.12.020; WAC 296-126-092.

182.    AGC's unlawful conduct harmed Lomibao and the other Washington Class Members by depriving them of the *bona fide* meal and rest periods they are owed under Washington law.

183.    Accordingly, Lomibao and the Washington Class Members are entitled to recover their unpaid wages for their missed meal and rest periods, penalties in an amount not less than $25

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

1   nor more than $1,000 per violation (WAC 296-126-226; RCW 49.12.170), and pre-judgment interest

2   at a rate of 12% per annum (RCW 19.52.020).

3       184.    Finally, Lomibao and the other Washington Class Members are also entitled to

4   recover their reasonable attorney's fees and costs incurred in this action. See RCW 49.12.150.

5   JURY DEMAND

6       185.    Lomibao demands a trial by jury on all Counts.

7   RELIEF SOUGHT

8       WHEREFORE, Lomibao, individually and on behalf of the other Hourly Employees, seeks

9   the following relief:

10      (a)    An Order designating this lawsuit as a collective action and authorizing notice

11          to the Hourly Employees allowing them to join this action by filing a written

12          notice of consent;

13      (b)    An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P.

14          23;

15      (c)    An Order appointing Lomibao and his counsel to represent the interests of

16          the Hourly Employees;

17      (d)    An Order finding AGC liable to Lomibao and the other FLSA Collective

18          Members for all unpaid overtime wages owed under the FLSA, plus liquidated

19          damages in an amount equal to their unpaid wages;

20      (e)    An Order finding AGC liable to Lomibao and the other Washington Class

21          Members for failing to provide them with *bona fide* meal and rest periods plus

22          all available statutory penalties;

23      (f)    An Order finding AGC liable to Lomibao and the other Washington Class

24          Members for all unpaid overtime wages owed under the WMWA;

25      (g)    An Order finding AGC liable to Lomibao and the other Washington Class

26          Members for all willfully withheld wages owed under the WWRA, plus

27          exemplary damages in an amount equal to 2 times their willfully withheld

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

wages;

(h)    An Order awarding attorney's fees, costs, and expenses;

(i)    A Judgment against AGC awarding Lomibao and the other Hourly Employees all their willfully withheld wages, unpaid overtime, liquidated damages, exemplary damages, statutory damages, attorney's fees, costs, expenses, and any other penalties available under the FLSA, WMWA, WWRA, and WIWA;

(j)    An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

(k)    All such other and further relief as may be necessary and appropriate.

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

Date: February 26, 2025

Respectfully submitted,

FRANK FREED SUBIT & THOMAS, LLP

By: */s/ Michael Subit*
    Michael C. Subit, WSBA #29189
    msubit@frankfreed.com
    705 Second Ave., Suite 1200
    Seattle, Washington 98104
    Telephone: 206.682.6711

JOSEPHSON DUNLAP, LLP

    Michael A. Josephson*
    mjosephson@mybackwages.com
    Andrew W. Dunlap*
    adunlap@mybackwages.com
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Telephone: 713.352.1100

BRUCKNER BURCH, PLLC

    Richard J. (Rex) Burch*
    rburch@brucknerburch.com
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Telephone: 713.877.8788

*Pro Hac Vice Applications Forthcoming*

ATTORNEYS FOR LOMIBAO
& THE HOURLY EMPLOYEES

ORIGINAL COMPLAINT - 23