**HONORABLE JOHN H. CHUN**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| EUFRONIO LOMIBAO, Individually and for Others Similarly Situated, <br> *Plaintiff,* <br><br> v. <br><br> AGC BIOLOGICS, INC., a Washington limited liability company, <br> *Defendant* | **Case No. 2:25-cv-00361-JHC** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **NOTE DATE: AUGUST 15, 2025** <br><br> **ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S OPP. To S.J.
Case No. 2:25-cv-00361-JHC

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

Table of Contents

1.  Summary ....................................................................................................................1

2.  Legal Standard ...........................................................................................................1

3.  Arguments and Authorities .......................................................................................2

    A.  FLSA Rights Cannot Be Waived By Contract ....................................................2

        a.  Legal precedent .............................................................................................2

        b.  Guidance from the Department of Labor ......................................................3

    B.  Plaintiff Cannot Have Waived His Rights In An Invalid Contract ......................5

    C.  Settling Claims Under The FLSA .........................................................................7

        a.  Legislative history ........................................................................................7

        b.  The interests of public policy ......................................................................8

        c.  Modern court opinions .................................................................................9

    D.  AGC's Cases are Inapplicable and/or Unpersuasive. ........................................10

        a.  Wilson v. Maxim Healthcare and Corbett v. Public Employees' Retirement System 11

        b.  Saari v. Subzero Engineering ....................................................................13

        c.  Martinez v. Bohls Bearing Equipment Co. ...............................................14

    E.  Plaintiff's Standing To Pursue Class Claims .....................................................15

    F.  The Severance Agreement Is Also Invalid Under Washington State Law ..........15

        a.  AGC's severance agreement is void as a matter of public policy in Washington ..17

        b.  Washington state law prohibits waiver of rights under the WMWA ......................15

        c.  Overlap of the WMWA and the FLSA .......................................................16

    G.  Genuine Disputes of Material Fact Preclude Summary Judgment .............................18

4.  Conclusion ...............................................................................................................19

PLAINTIFF'S OPP. To S.J.
Case No. 2:25-cv-00361-JHC

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

Table of Authorities

## Cases

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015)..................................................................12
*Ambrosino v. Home Depot. U.S.A., Inc.,*
    No. 11cv1319 L(MDD), 2014 WL 1671489 (S.D.Cal. Apr. 28, 2014)............5
*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................1
*Anfinson v. FedEx Ground Package Sys., Inc.,*
    174 Wash.2d 851, 281 P.3d 289 (2012).....................................................16
*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981) ....................................................................2, 3, 6, 9
*Bodle v. TXL Mortg. Corp.,*
    788 F.3d 159 (5th Cir. 2015)..................................................................12
*Brooklyn Sav. Bank v. O'Neil,*
    324 U.S. 697 (1945) ....................................................................2, 5, 7
*Brown v. Snohomish County Physicians Corp.,*
    120 Wn.2d 747, 845 P.2d 334 (1993).....................................................17
*Bureau of Alcohol, Tobacco and Firearms v. FLRA,*
    464 U.S. 89 (1983) ............................................................................4
*Carranza v. Dovex Fruit Co.,*
    190 Wash. 2d 612, 416 P.3d 1205 (2018)..................................................16
*Cavazos v. Salas Concrete Inc.,*
    2022 WL 506005 (E.D. Cal. Feb. 18, 2022) ...............................................6
*Chery v. Tegria Holdings LLC,*
    No. C23-612-MLP, 2024 WL 5009036 (W.D. Wash. Dec. 6, 2024) .......... 6, 9
*Collins v. Lobdell,*
    188 F.3d 1124 (9th Cir. 1999)..................................................................3
*Corbett v. Pub. Employees' Ret. Sys.,*
    716 F. Supp. 3d 1006 (D. Nev. 2024)......................................................12
*County of Maui v. Hawaii Wildlife Fund,*
    590 U.S. 165 (2020)............................................................................4
*Cunningham v. Mission Support All., LLC,*
    No. 4:18-CV-5060-RMP, 2019 WL 13201913 (E.D. Wash. July 22, 2019)........3
*D.A. Schulte, Inc., v. Gangi,*
    328 U.S. 108 (1946) ............................................................................6
*Delmore v. Ricoh Americas Corp.,*
    667 F. Supp. 2d 1129 (N.D. Cal. 2009)....................................................18
*Dent v. Cox Commc'ns Las Vegas, Inc.,*
    502 F.3d 1141 (9th Cir. 2007)..................................................................9
*Drinkwitz v. Alliant Techsystems, Inc.,* 140 Wash. 2d 291, 300 (2000),
    2d 291, 300 (2000)........................................................................15, 16
*Duarte v. MZR Inc.,*
    No. C 09-00479 JW, 2010 WL 11586755 (N.D. Cal. July 8, 2010) ...............9

*Edenholm v. Flytrap Network Sec., Inc.,*
   141 Wash. App. 1011 (2007)...............................................................................................17

*Evans v. Centurion Managed Care of Arizona LLC,*
   686 F. Supp. 3d 880 (D. Ariz. 2023)...................................................................................11

*Fails v. Pathway Leasing LLC,*
   2018 WL 6056428 (D. Colo. Nov. 19, 2019)......................................................................14

*Friends of Big Bear Valley v. United States Forest Serv.,*
   776 F. Supp. 3d 824 (C.D. Cal. 2025)..................................................................................4

*Genesis Healthcare Corp. v. Symczyk,*
   569 U.S. 66 (2013).............................................................................................................1, 2

*Glass v. UBS Fin. Servs., Inc.,*
   331 F. App'x 452 (9th Cir. 2009).........................................................................................12

*Gonzalez v. Tanimura & Antle, Inc.,*
   No. CV06-2485-PHX-MHM, 2008 WL 4446536 (D. Ariz. Sept. 30, 2008) .......................1

*Gordon v. City of Oakland,*
   627 F.3d 1092 (9th Cir. 2010)...............................................................................................2

*Goudie v. Cable Commc'ns, Inc.,*
   No. CV 08-507-AC, 2009 WL 88336 (D. Or. Jan. 12, 2009)...............................................9

*Hawthorn v. Fiesta Flooring, LLC,*
   No. 1:19-cv-00019 WJ/SCY, 2020 WL 3085921 (D.N.M. June 10, 2020)..........................14

*Hill v. Xerox Bus. Servs., LLC,*
   191 Wash. 2d 751, 426 P.3d 703 (2018)..............................................................................15

*Hisle v. Todd Pac. Shipyards Corp.,*
   151 Wash.2d 853, (2004)......................................................................................................16

*In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.,*
   481 F.3d 1119 (9th Cir. 2007)................................................................................................4

*Integrity Staffing Sols., Inc. v. Busk,*
   135 S. Ct. 513 (2014).............................................................................................................8

*Intel Corp. v. Hartford Accident & Indem. Co.,*
   952 F.2d 1551 (9th Cir.1991)................................................................................................1

*Internat'l Ass'n of Fire Fighters, Local 46 v. City of Everett,*
   146 Wash.2d 29 (2002).........................................................................................................15

*Jewell Ridge Coal Corp. v. UMWA Local,*
   6167, 325 U.S. 161 (1945).....................................................................................................7

*Kerzich v. Cty. of Tuolumne,*
   No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496 (E.D. Cal. Apr. 19, 2019) ...................9

*Khadera v. ABM Indus. Inc.,*
   No. C08-0417 RSM, 2012 WL 581402 (W.D. Wash. Feb. 21, 2012).....................................3

*Kraus v. PA Fit II, LLC,*
   155 F. Supp. 3d 516 (E.D. Pa. 2016)......................................................................................8

*Lerwill v. Inflight Servs., Inc.,*
   379 F. Supp. 690 (N.D. Cal. 1974).........................................................................................8

*Lierboe v. State Farm Mut. Auto. Ins. Co.,*
   350 F.3d 1018 (9th Cir. 2003)...............................................................................................15

*Loper Bright Enters. v. Raimondo,*
   603 U.S. 369 (2024)................................................................................................................4

*Loc. 246 Util. Workers Union of Am. v. S. California Edison Co.,*
   83 F.3d 292 (9th Cir. 1996)....................................................................................................2

PLAINTIFF'S OPP. To S.J.
Case No. 2:25-cv-00361-JHC

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

*Lopez v. Nights of Cabiria, LLC,*
    96 F.Supp.3d 170 (S.D.N.Y.2015) ..................................................................................8

*Lund v. J.C. Penney Outlet,*
    911 F. Supp. 442 (D. Nev. 1996) ...................................................................................1

*Lynn's Food Stores, Inc. v. United States,*
    679 F.2d 1350 (11th Cir. 1982)..............................................................................9, 14

Makinen v. George,
    19 Wn.2d 340, 142 P.2d 910 (1943)............................................................................17

*Martinez v. Bohls Bearing Equipment Co.,*
    361 F. Supp. 2d 608 (W.D. Tex. 2005)......................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .........................................................................................................1

*May v. Anderson,*
    119 P.3d 1254 (Nev. 2005) ...........................................................................................18

*McClain v. State,*
    34 Wash. App. 2d 247 (2025) .................................................................................1, 16

*McKeen-Chaplin v. Franklin Am. Mortg. Co.,* No. C,
    2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) .......................................................3, 5

*Mei Xing Yu v. Hasaki Rest., Inc.,*
    944 F.3d 395 (2d Cir. 2019) ...........................................................................................4

*Meza v. 317 Amsterdam Corp.,*
    14–CV–9007 (VSB) 2015 WL 9161791 (S.D.N.Y. Dec. 14, 2015)......................9

*Miranda v. City of Ceres,*
    No. 118CV00041DADBAM, 2020 WL 5495260 (E.D. Cal. Sept. 11, 2020) ..............3, 9

*Nen Thio v. Genji, LLC,*
    14 F. Supp. 3d 1324 (N.D. Cal. 2014)...........................................................................5

*Orme School v. Reeves,*
    166 Ariz. 301, 802 P.2d 1000 (1990)............................................................................2

*Oubre v. Entergy Operations, Inc.,*
    522 U.S. 422 (1998) .......................................................................................................10

*Parth v. Pomona Valley Hosp. Med. Ctr.,*
    630 F.3d 794 (9th Cir. 2010) .........................................................................................2

*Pellino v. Brink's Inc.,*
    164 Wash. App. 668 (2011)..........................................................................................15

*Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees,*
    130 Wash.2d 401 (1996) ...............................................................................................15

*Prakash v. Savi Techs., Inc.,*
    No. C10-1845RSL, 2011 WL 2414349 (W.D. Wash. June 10, 2011) ..................3

*R.J. Armstrong Living Tr. v. Holmes,*
    No. 3:22-CV-00375-ART-CSD, 2025 WL 973528 (D. Nev. Mar. 31, 2025) ............18

*Saari v. Subzero Engineering,*
    No. 2:20-CV-00849-CMR, 2021 WL 4245300 (D. Utah Sept. 17, 2021) ..................13, 14

*Sanchez v. Hudson,*
    No. CV-24-00243-TUC-RCC (JR), 2025 WL 1225299 (D. Ariz. Jan. 24, 2025) ............4

*Scott By & Through Scott v. Pac. W. Mountain Resort,*
    119 Wash. 2d 484 (1992) .........................................................................................1, 17

*See v. Durang,*
    711 F.2d 141 (9th Cir.1983) ...........................................................................................1

PLAINTIFF'S OPP. To S.J.
Case No. 2:25-cv-00361-JHC

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016) ................................................................. 5, 8, 9

*Seminiano v. Xyris Enter., Inc.*,
    602 F. App'x 682 (9th Cir. 2015) ................................................................................ 12

*Senne v. Kansas City Royals Baseball Corp.*,
    934 F.3d 918 (9th Cir. 2019) ...................................................................................... 15

*Sifferman v. Sterling Fin. Corp.*,
    No. C13-183 MJP, 2014 WL 28854 (W.D. Wash. Jan. 2, 2014) ................................. 3

*Sims v. Hous. Auth. Of City of El Paso*,
    No. EP-10-CV-109-KC, 2011 WL 3862194 (W.D. Tex. Sept. 1, 2011) ..................... 12

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ...................................................................................................... 4

*Smith v. Homes*,
    No. 3:13-CV-00202-MMDWGC, 2014 WL 4851503 (D. Nev. Sept. 26, 2014) ......... 18

*Solis v. Washington*,
    No. 08-5362RJB, 2009 WL 2855441 (W.D. Wash. Aug. 31, 2009) ............................. 8

*Spokane Valley Fire Dep't v. Int'l Ass'n of Fire Fighters AFL-CIO Loc. 3701*,
    No. 2:17-CV-00250-SMJ, 2019 WL 1748515 (E.D. Wash. Apr. 18, 2019) ............ 1, 3

*State Farm Gen. Ins. Co. v. Emerson*,
    102 Wn.2d 477, 687 P.2d 1139 (1984) ...................................................................... 17

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 1232*,
    321 U.S. 590 (1944) ...................................................................................................... 2

*Thiessen v. Gen. Elec. Capital Corp.*,
    267 F.3d 1095 (10th Cir. 2001) .................................................................................. 15

*Tony & Susan Alamo Found. v. Sec'y of Lab.*,
    471 U.S. 290 (1985) ...................................................................................................... 7

*Tribble v. Surface Preparation Sys. Inc.*,
    No. 6:20-CV-00181-IM, 2023 WL 8828012 (D. Or. Dec. 21, 2023) ......................... 18

*United States v. Mastrovito*,
    830 F. Supp. 1281 (D. Ariz. 1993) .............................................................................. 2

*United States v. Moore*,
    95 U.S. 760 (1878) ........................................................................................................ 4

*Wagenblast v. Odessa Sch. Dist.*,
    110 Wn.2d 845, 758 P.2d 968 (1988) ........................................................................ 17

*Wagner v. Cnty. of Inyo*,
    No. 117CV00969DADJLT, 2018 WL 5099761 (E.D. Cal. Oct. 18, 2018) ................ 3, 9

*Walton v. United Consumers Club, Inc.*,
    786 F.2d 303 (7th Cir. 1981) ....................................................................................... 9

*Webster v. Pub. Sch. Employees of Washington*,
    247 F.3d 910 (9th Cir.2001) ......................................................................................... 4

*Williams v. Strickland*,
    87 F.3d 1064 (9th Cir. 1996) ....................................................................................... 2

*Wilson v. Maxim Healthcare Servs., Inc.*,
    No. C14-789RSL, 2017 WL 2988289 (W.D. Wash. Dec. 22, 2014) .......................... 11

*Zako v. Hamilton Co.*,
    No. 216CV166JCMPAL, 2020 WL 406376 (D. Nev. Jan. 24, 2020) ....................... 3, 9

Statutes

PLAINTIFF'S OPP. To S.J.
Case No. 2:25-cv-00361-JHC

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

29 U.S.C. 251(a) .................................................................................................8
29 U.S.C.A. § 216(b) ..........................................................................................15
RCW 49.46.090 ...................................................................................................16
RCW 49.46.110 ...................................................................................................16
RCW 49.46.130 ...................................................................................................16

   Regulations

Washington Administrative Code chapter 246-945 .........................................17

   Other Authorities

81 Cong.Rec. 7652 ...............................................................................................7
H.R. Rep. No. 101-664 ........................................................................................8

PLAINTIFF'S OPP. To S.J.
Case No. 2:25-cv-00361-JHC

JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.    Summary

AGC Biologics, Inc. failed to pay Lomibao, and other workers like him, as required by state and federal law. Instead, AGC shorted its workers on hours, overtime, and failed to provide bona fide meal and rest periods.

Hoping to avoid being called to task, AGC says Lomibao waived his statutory wage and hour rights in a private, out-of-court severance agreement AGC wrote to its advantage. Not so. It is well-settled the Fair Labor Standards Act (FLSA) "establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Indeed, both the FLSA and Washington state law protect employees from employers who attempt to weasel around the law through clever draftsmanship.[1] Because AGC's purported "release" is invalid as to Lomibao's statutory wage and hour claims, it's motion should be denied.

### 2.    Legal Standard

"Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate." *Lund v. J.C. Penney Outlet*, 911 F. Supp. 442, 443 (D. Nev. 1996) (citing *See v. Durang,* 711 F.2d 141 (9th Cir.1983)). Generally, "trial courts should act … with caution in granting summary judgment.*" Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And, "[t]he court must draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Gonzalez v. Tanimura & Antle, Inc.,* No. CV06-2485-PHX-MHM, 2008 WL 4446536, at *7 (D. Ariz. Sept. 30, 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991)).

AGC moved for summary judgment based partly on standing. In such scenarios, "the [Plaintiff] need not conclusively establish every element of [standing] and need only show a genuine dispute of material fact as to those elements." *Spokane Valley Fire Dep't v. Int'l Ass'n of Fire Fighters AFL-CIO Loc. 3701*, No. 2:17-CV-00250-SMJ, 2019 WL 1748515, at *3 (E.D. Wash. Apr. 18, 2019). And "summary judgment is not appropriate where the trial judge would be required to choose among

---

[1] *See, e.g., Scott By & Through Scott v. Pac. W. Mountain Resort*, 119 Wash. 2d 484, 490-92 (1992); *McClain v. State*, 34 Wash. App. 2d 247, 271 (2025).

competing or conflicting inferences … Essentially, the Court must determine … whether the evidence is so one-sided that one party must prevail as a matter of law." *United States v. Mastrovito*, 830 F. Supp. 1281, 1282 (D. Ariz. 1993), *aff'd*, 46 F.3d 1147 (9th Cir. 1995) (citing *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000, 1010 (1990)).

### 3.   Arguments and Authorities

#### A.   FLSA RIGHTS CANNOT BE WAIVED BY CONTRACT

AGC says its severance agreement waives Lomibao's FLSA rights and precludes this suit. But FLSA rights cannot be modified by contract. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981). The law's unwillingness to permit a private waiver protects both the workers and the public policies behind the statutory wage requirements. *Id.* at 740. Because Lomibao could not release his claims via the severance agreement, he has standing to proceed.

##### i.   Legal precedent

Supreme Court precedent is unequivocal: FLSA rights "cannot be abridged by contract or otherwise waived." *Id.* No matter how much AGC wishes otherwise, its contract cannot simply vanish the Plaintiff's rights under the FLSA because "any custom or contract falling short" of the worker protections Congress intended to enact via the FLSA "**cannot** be utilized to deprive employees of their statutory rights." *Id.* (emphasis added) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 1232,* 321 U.S. 590, 602-603 (1944)). The Supreme Court reaffirmed that "[t]he FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that **cannot be modified by contract**." *Genesis Healthcare Corp.*, 569 U.S. at 69 (emphasis added).

Naturally, the better reasoned cases in the Ninth Circuit follow the Supreme Court's directive and prohibit waiver of FLSA rights. *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 802 (9th Cir. 2010) ("an employee may not waive his or her rights under the FLSA").[2] In fact, the Ninth Circuit has already made a finding on the correct course of action when an employee signs an agreement that

---

[2] *See also See Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) ("FLSA rights cannot be waived"); *Loc. 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) (finding the provisions of the FLSA cannot be waived even through collective bargaining); *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010) ("employees cannot waive the protections of the FLSA") (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

waives their FLSA rights: "[w]here employers and employees reach an agreement that expressly violates the FLSA … employees may **still** bring actions to protect rights provided for in the FLSA." *Collins v. Lobdell*, 188 F.3d 1124, 1127–28 (9th Cir. 1999) (emphasis added).

Many district courts have also found FLSA rights could not be waived. *See McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) ("An employee's right[s] … under the FLSA [are] nonwaivable; thus FLSA rights cannot be abridged by contract or otherwise waived").[3] In fact, multiple cases from the Seattle Division of Washington's Western District recognize the binding Supreme Court and Ninth Circuit, finding on multiple occasions that "FLSA rights cannot be abridged by contract … [and] waiver is not a defense to overtime claims under the FLSA." *Sifferman v. Sterling Fin. Corp.*, No. C13-183 MJP, 2014 WL 28854, at *2 (W.D. Wash. Jan. 2, 2014) (citing *Barrentine*, 450 U.S. at 740).[4] The Western District's sister court, the Eastern District of Washington, also agrees "FLSA rights cannot be abridged by contract or otherwise waived." *Cunningham v. Mission Support All., LLC*, No. 4:18-CV-5060-RMP, 2019 WL 13201913, at *8 (E.D. Wash. July 22, 2019) (quoting *Barrentine*, 450 U.S. at 740-41).[5]

### ii.  Guidance from the Department of Labor

If precedent from the Supreme Court, the Ninth Circuit, and case law from this division's own rulings is not enough, the Department of Labor (DOL) also offers guidance. Generally, "[courts] must give deference to the DOL's interpretation of its own regulations through, for example, Opinion

---

[3] *See also Wagner v. Cnty. of Inyo*, No. 117CV00969DADJLT, 2018 WL 5099761, at *1 (E.D. Cal. Oct. 18, 2018) (agreeing that FLSA rights cannot be modified by contract); *Miranda v. City of Ceres*, No. 118CV00041DADBAM, 2020 WL 5495260, at *2 (E.D. Cal. Sept. 11, 2020), *report and recommendation adopted*, No. 118CV00041DADBAM, 2020 WL 7319523 (E.D. Cal. Dec. 11, 2020) (same); *Zako v. Hamilton Co.*, No. 216CV166JCMPAL, 2020 WL 406376, at *3 (D. Nev. Jan. 24, 2020) (same).

[4] *See also Khadera v. ABM Indus. Inc.*, No. C08-0417 RSM, 2012 WL 581402, at *3 (W.D. Wash. Feb. 21, 2012) ("employees may not waive their rights under Washington's wage and hour laws or the FLSA"); *Prakash v. Savi Techs., Inc.*, No. C10-1845RSL, 2011 WL 2414349, at *3 (W.D. Wash. June 10, 2011) ("courts have consistently held that an employee cannot waive his or her rights under the FLSA and the MWA.").

[5] *See also see also Spokane Valley Fire Dep't*, 2019 WL 1748515, at *4 ("employees cannot waive the protections of the FLSA.").

Letters." [6] *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1129 (9th Cir. 2007) (citing *Webster v. Pub. Sch. Employees of Washington,* 247 F.3d 910, 914 n. 2 (9th Cir.2001)). "Although an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within [the agency's] expertise. Such expertise has always been one of the factors which may give an Executive Branch interpretation particular power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (cleaned up) (quoting *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98 n. 8 (1983); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); citing *County of Maui v. Hawaii Wildlife Fund*, 590 U.S. 165, 180 (2020); *United States v. Moore*, 95 U.S. 760, 763 (1878)).

The DOL agrees "an employee … may not waive his or her rights under the FLSA by agreement or contract[.]"[7] In a recent amicus brief, the DOL explained its position to the Second Circuit Court of Appeals. Brief of *Amicus Curiae* Secretary of Labor in Support of the District Court's Decision, *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019) (attached here as Exhibit A). The DOL aligns itself "with Supreme Court precedent, which holds that an employee's rights under the FLSA are nonwaivable" and "[t]he Department's longstanding position [that] FLSA rights cannot be waived or compromised by private agreement." Ex. A, at p. 2 and 6.

---

[6] Plaintiff recognizes *Loper Bright* affected precedent regarding agency deference under certain conditions. However, *Loper* held that "courts … may not defer to an agency interpretation of the law simply because a statute is ambiguous," (*Loper Bright* , 603 U.S. at 413) and courts in the Ninth Circuit have declined to apply *Loper* when there are no allegations of ambiguity in the statue in question. *See, e.g., Sanchez v. Hudson*, No. CV-24-00243-TUC-RCC (JR), 2025 WL 1225299, at *8 (D. Ariz. Jan. 24, 2025), *adopted*, No. CV-24-00243-TUC-RCC, 2025 WL 1222300 (D. Ariz. Apr. 28, 2025) ("this Court finds that the directive in *Loper* … is inapplicable for want of ambiguity."); *Friends of Big Bear Valley v. United States Forest Serv.*, 776 F. Supp. 3d 824, 830 (C.D. Cal. 2025) (declining to apply *Loper* when the necessary judgments and analysis are "within the agency' expertise."). As neither AGC nor the Plaintiff are alleging ambiguity within the FLSA, *Loper* is not applicable and the Court may rely on Department of Labor guidance regarding this matter.
[7] FLSA Hours Worked Advisor, Collective Bargaining Agreements. U.S. Department of Labor elaws Advisors. https://webapps.dol.gov/elaws/whd/flsa/hoursworked/screen1c.asp (last accessed July 30, 2025).

As the case law from all levels of the judiciary makes clear, and as supported by the DOL, one simply cannot waive their FLSA rights in a private out-of-court settlement. As such, the case law alone shows AGC has failed to show it is entitled to judgment as a matter of law.

### B. PLAINTIFF CANNOT HAVE WAIVED HIS RIGHTS IN AN INVALID CONTRACT

*Even if* the law were fundamentally different and Lomibao could simply waive his FLSA rights, there are still requirements that must be met for a contract (such as AGC's severance agreement), to qualify as a legitimate and legal release of FLSA claims; notably, it must resolve a bona fide dispute. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). In evaluating whether a plaintiff can waive his rights to recover liquidated damages under the FLSA, the Supreme Court held "[a] preliminary question arises as to whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages." *Id.* The Court determined a release was not valid when, "[w]ith the exception of the recital in the release, there is nothing in the record which shows that the respondent's release was obtained as the result of the settlement of a bona fide dispute between the parties with respect to coverage or amount;" moreover, the Court found that in the absence of a bona fide dispute, the Respondent's waiver of his FLSA rights did not bar a subsequent action to recover damages.[8] *Id.* at 704.

Here, there was no bona fide dispute and the severance agreement was a "mere waiver of his rights." Ex. B Lomibao Decl. at ¶¶ 3-5. The declaration provided by AGC states "Plaintiff's employment with AGC was terminated as part of a reduction in force. In connection with his separation, AGC offered Plaintiff a severance payment as part of a Separation Agreement and

---

[8] In the context of modern FLSA cases, "disputed issues of FLSA coverage and potential liability … constitutes a bona fide dispute." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1338 (N.D. Cal. 2014). Or, put another way, a bona fide dispute only "exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 1671489 (S.D.Cal. Apr. 28, 2014)). *See also McKeen-Chaplin*, 2012 WL 6629608, at *2 ("This case involves disputed issues of FLSA coverage and potential liability, which constitutes a bona fide dispute."))

Release." Doc. 17, Declaration of Ranjit Johal at ¶¶ 4-5. The separation agreement, attached to AGC's declaration as Exhibit A, also makes it clear the severance money and release are related directly to, and only to, the end of the Plaintiff's employment. Doc. 17 Ex. A at ¶¶ A-C. AGC's affidavit and the severance agreement both utterly fail to establish a bona fide dispute with the Plaintiff over money allegedly owed under the FLSA, nor have they suggested that the severance agreement was a settlement of an active dispute; in fact, there was no bona fide dispute at the time the severance agreement was presented to Lomibao. Exhibit B, Declaration of Eufronio Lomibao at ¶¶ 3-4. While Plaintiff stands by his assertion that AGC knew or should have known about the unpaid "off the clock" work, there is simply no evidence that the severance payment was negotiated with recognition of that liability, by either party. Under *Brooklyn Savings*, that fact alone invalidates any alleged waiver of FLSA rights, and in turn also invalidates AGC's claim of entitlement to summary judgment by law.

But Supreme Court precedent narrows the ability to settle FLSA claims even farther. *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 114 (1946). "[I]n *Gangi*, the Court expanded upon *Brooklyn Savings* to hold that **private settlements of FLSA claims are impermissible** even where there is a bona fide dispute over coverage under the Act." Ex. A at p. 10 (emphasis added). Just last year, Judge Peterson applied *Brooklyn Savings* and *Gangi* in *Chery v. Tegria Holdings*, finding "an employee's claims under the FLSA are nonwaivable. Accordingly, settlement of FLSA claims requires court approval … [and] before approving a Settlement, the Court examines whether a settlement is a fair and reasonable resolution of a bona fide dispute." *Chery v. Tegria Holdings LLC*, No. C23-612-MLP, 2024 WL 5009036, at *6 (W.D. Wash. Dec. 6, 2024) (cleaned up) (quoting *Barrentine*, 450 U.S. at 740; *Cavazos v. Salas Concrete Inc.*, 2022 WL 506005, at *5 (E.D. Cal. Feb. 18, 2022)).

So even if AGC could (a) clear the hurdle of the prohibition on the waiver of FLSA rights by the Supreme Court, the Ninth Circuit, the Ninth Circuit District Courts, and this Division; and then (b) also clear the hurdle regarding a lack of a bona fide dispute under *Brooklyn Savings*, it *still* would not be able to enforce a waiver of FLSA rights under *Gangi* and the Court's *Chery* ruling.

### C.  Settling Claims Under The FLSA

That is not to say parties cannot settle an FLSA claim. Generally, "an employee can only enter into a settlement agreement that waives or compromises [their] rights under the FLSA if the agreement is approved by a court or supervised by the [DOL]." Ex. A at p. 6.

### i.  Legislative history

In their amicus brief, the DOL provides an in-depth analysis of the judicial and legislative history of the prohibition of FLSA waivers and the requirement of DOL, or court, supervision of settlements. Ex. A. Notably:

> [T]he Court has determined, based on the legislative history of the FLSA, that the Act constituted a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency. According to the Court, the protective purposes of the Act thus require that it be applied even to those who would decline its protections; **otherwise, employers might be able to use superior bargaining power to coerce employees to … waive their protections under the Act**.

> Second, in enacting the FLSA, Congress sought to establish a uniform national policy of guaranteeing compensation for all work performed by covered employees. Consequently, any custom or contract falling short of that basic policy … cannot be utilized to deprive employees of their statutory rights.

> …According to the Court, no one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act … The Court further concluded that prohibition of waiver of claims for liquidated damages accords with the Congressional policy of uniformity in the application of the provisions of the Act to all employers subject thereto.

Ex. A at p. 7-9 (cleaned up) (quoting *Brooklyn Savings*, 324 U.S. at 706; *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290 (1985); *Jewell Ridge Coal Corp. v. UMWA Local 6167*, 325 U.S. 161, 167 (1945); *Brooklyn Savings*, 324 U.S. at 707, 707 n.18 (citing, *inter alia*, 81 Cong.Rec. 7652, 7672, 7885). Moreover, Within a few years of *Brooklyn Savings* and *Gangi*, Congress accepted and built upon their holdings … Congress expressly authorized, in section 3 of the Portal Act, the compromise and waiver of claims that had accrued **prior to** the Act's enactment. However, Congress left the rule announced in *Brooklyn Savings* and *Gangi* undisturbed for prospective claims … Congress accepted the application of the *Brooklyn Savings* and *Gangi* nonwaiver rule to future FLSA claims.

Ex. A pgs. 11-12 (cleaned up) (citing *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014);

29 U.S.C. 251(a)). More recently,

> [I]n a 1988 Senate hearing … the Solicitor of Labor "made clear that the Secretary … does not recognize as valid any waiver of FLSA rights that is not supervised either by the Secretary pursuant to section 16(c) (or, in the case of a private action filed under section 16(b)) by a federal court.

Ex. A at p. 19 (cleaned up) (quoting H.R. Rep. No. 101-664, at 17-18 (1990) (citing Age Discrimination

in Employment Act—Waiver of Rights, S. Hrg. No. 100-717 Before the Subcomm. on Labor of the

S. Comm. On Labor & Human Res., at 110-15 (1988)).

### ii.  The interests of public policy

Courts understand the concerns regarding unequal bargaining power and stand behind the

Supreme Court's directives, finding "[t]he FLSA places strict limits on an employee's ability to waive

claims for unpaid wages or overtime … for fear that employers may coerce employees into settlement

and waiver." *Selk*, 159 F. Supp. 3d at 1172 (quoting *Lopez v. Nights of Cabiria, LLC,* 96 F.Supp.3d 170,

175 (S.D.N.Y.2015)); *see also Solis v. Washington*, No. 08-5362RJB, 2009 WL 2855441, at *7 (W.D. Wash.

Aug. 31, 2009). The risk of allowing FLSA rights to be waived is clear: "[i]f so-called "global

settlements" were not subject to judicial review simply because the employee agreed to waive both

FLSA and non-FLSA rights, employers could evade the FLSA's protections by simple contractual

draftsmanship. Congressional intent would be all but abrogated by couching an FLSA waiver within

a larger settlement agreement." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).

Which is exactly what AGC is trying to pull here.

Ninth Circuit courts have also weighed in on the issue, finding:

> Defendant's reasoning is that rights which may not be waived because protected as a matter of public policy by the Fair Labor Standards Act, nevertheless may be waived when they are simply a matter of contract between the parties. But these parties may not do by contract what is prohibited by statute. *See generally* 6A Corbin on Contracts (1962). Even assuming these parties may waive statutory benefits intended solely for their own protection, they may not by contract waive rights intended to benefit others.

*Lerwill v. Inflight Servs., Inc.*, 379 F. Supp. 690, 696 (N.D. Cal. 1974), *aff'd sub nom. Lerwill v. Inflight Motion

Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978). Here, AGC uses the same reasoning rejected by the *Lerwill*

court; nonetheless, as the Court stated, AGC cannot do by contract what is prohibited by statute, no matter how they worded that contract.

### iii. Modern court opinions

The solution, as anticipated by AGC and expressed by countless courts within this Circuit, is to require either DOL or judicial supervision of FLSA settlements. *See, e.g., Zako*, 2020 WL 406376, at *3 ("any settlement of an FLSA collective action requires the supervision of either the secretary of labor or the district court") (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)); *Duarte v. MZR Inc.*, No. C 09-00479 JW, 2010 WL 11586755, at *3 (N.D. Cal. July 8, 2010) ("To achieve a waiver of rights under the FLSA in a settlement for payment of unpaid overtime wages, three requirements must be satisfied: (1) the employee must agree to accept payment; (2) the employee must receive payment in full; and (3) the payment must be supervised by the Secretary of Labor" (citing *Dent v. Cox Comm'ns Las Vegas, Inc.*, 502 F.3d 1141, 1146-1147 (9th Cir. 2007); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305 (7th Cir. 1981)).[9]

By requiring DOL or judicial supervision of FLSA agreements, "the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes." *Goudie v. Cable Comm'ns, Inc.*, No. CV 08-507-AC, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009). Courts, both in this Circuit and nationwide, continue to enforce judicial review of FLSA agreements because "courts must avoid allowing a recovery that has the effect of substantially enforcing the contract that has been declared unenforceable, since to do so would defeat the policy that led to the … rule in the

---

[9] *See also Miranda*, 2020 WL 5495260, at *2 ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court" (citing *Barrentine*, 450 U.S. at 740; *Kerzich v. Cty. of Tuolumne*, No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496, at *2 (E.D. Cal. Apr. 19, 2019)); *Wagner*, 2018 WL 5099761, at *1 (same); *Chery*, 2024 WL 5009036, at *6 (same); *Selk*, 159 F.Supp. 3d at 1172 ("claims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court" (citing *Lynn's Food Stores*, 679 F.2d at 1352-53; *Meza v. 317 Amsterdam Corp.*, 14–CV–9007 (VSB), 2015 WL 9161791, *1 (S.D.N.Y. Dec. 14, 2015) ("Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.") (citation omitted)).

first place." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998) (quoting D. Dobbs, Law of Remedies 982 (1973)).

Here, the severance agreement itself is an excellent example of why the FLSA endeavors to protect workers from predatory, out-of-court settlements by requiring supervision of settlements. The agreement released AGC from nearly all claims regarding almost any issue in perpetuity. In exchange, AGC offered Lomibao a mere $7,140.00. Reviewing the allegations in the complaint regarding the amount of unpaid time, the Court could easily find that Lomibao is owed approximately $108,438.75 in back wages alone.[10] Surely this is a textbook example of why Congress did not want to allow private employers to contract around the protections of the FLSA.

AGC's deliberate attempt to circumvent DOL and/or judicial approval undermines the entire purpose of the FLSA. AGC should not be rewarded for attempting to weaken federal law and damage the general good of public policy. AGC's endeavor to slip in an improper waiver of rights into a larger settlement agreement without judicial approval should not entitle them to summary judgment when the legal basis of their argument cannot stand in any way.

### D. AGC'S CASES ARE INAPPLICABLE AND/OR UNPERSUASIVE.

All the cases AGC relies on to support its position fail to address private, out-of-court agreements. Within the cases cited in Section C of its motion, all but two are outside of the Ninth Circuit and therefore neither binding on this Court's decision, nor persuasive considering the Court's clearly-articulated precedent regarding the waiver of FLSA rights as discussed above. In the interests

---

[10] Plaintiff based this calculation on a base pay rate of $35.70 per hour (Doc. 1 ¶ 44), making time and a half for overtime $56.25 per hour. The Plaintiff worked anywhere from 30 minutes to 2 hours per shift off the clock, and missed at least one 30-minute meal break and two 10-minute rest breaks per shift. Doc. 1. at ¶¶ 52-61, 176). The Plaintiff worked 8-12 hours a day, 5-7 days a week until he was terminated. *Id.* at ¶ 47. AGC reported Lomibao worked for them starting in 2018 (Doc. 17 at ¶ 3), so using a three-year lookback, from February 26, 2021 through May 2024, taking an average of the unpaid time (125 minutes per shift), and subtracting for 5 weeks of vacation (2 each year plus 1 week in 2024), the Plaintiff was owed at least $108,438.75.00 in back wages, plus potential additional damages in the form of 12% interest per annum under the FLSA and Washington law, two times his withheld wages under Washington law, fines, attorneys' fees and costs, and adjustments to the overtime rate based on the regular rate allegations in the complaint.

of judicial efficiency, Plaintiff will not address every out-of-Circuit, non-binding case cited by AGC.[11]

However, AGC relies most heavily on *Saari v. Subzero Engineering* and *Martinez v. Bohls Bearing Equipment Co.*, and as such, the Plaintiff will briefly address these two cases along with those in-Circuit.

### i. Wilson v. Maxim Healthcare and Corbett v. Public Employees' Retirement System

The first in-Circuit case cited by AGC is *Wilson v. Maxim Healthcare Services*. The *Wilson* case involved allegations of unpaid overtime wages under the FLSA but nothing to do with severance agreements or the waiving of anyone's FLSA rights. *Wilson v. Maxim Healthcare Servs., Inc.*, No. C14-789RSL, 2017 WL 2988289, at *1 (W.D. Wash. Dec. 22, 2014). Furthermore, the *Wilson* parties had gone through the entire litigation process for a bona fide dispute and were seeking to resolve the case with a stipulated motion for approval of settlement agreements and dismissal with prejudice. *Id.* The Court declined to review the FLSA settlement agreements "[b]ecause plaintiffs have decertified their collective action and reached settlement agreements on an individual basis." *Id.* Importantly, the plaintiffs in the *Wilson* case reached those settlements via the civil judicial system; *Wilson* did not address private, out of court settlements such as AGC's severance agreement.

This case differs significantly from *Wilson* in several key aspects. The *Wilson* plaintiffs were in a dispute regarding unpaid wages, not severance agreements or the alleged waiver of FLSA rights.

---

[11] In section A of its motion, AGC says three in-circuit cases supports its position that the Ninth Circuit permits private, out of court settlements of FLSA claims. They don't. Briefly, *Sirisup v. It's Thai, LLC* found claims were barred by a prior, *court-approved*, Superior Court settlement agreement; *Sam v. City of Tacoma* had nothing to do with FLSA claims: the plaintiff was a police informant who signed an agreement releasing the City from claims related to "the City's seizure, storage, and return of said property;" and *Lyon v. F/V ENDURANCE* involved "claims in admiralty," and the release in question referred to the release of personal injury claims. AGC's motion deals solely with statutory wage claims. Because the rules for obtaining a release for these claims is specific to that type of claim, all three of AGC's cases are inapposite. AGC also cites *Evans* to argue Congress did not intend to require that settlements be approved. Doc. 17 at § IV ¶ C. But the *Evans* court specified "the question presented here … is whether **represented parties embroiled in FLSA litigation**, who have **bona fide disputes** over such matters as the number of hours worked, can reach a compromise and then **stipulate to dismissal of the action** without judicial approval of their settlement." *Evans v. Centurion Managed Care of Arizona LLC*, 686 F. Supp. 3d 880, 885 (D. Ariz. 2023) (emphasis added). AGC's pre-dispute severance agreement wasn't reached during FLSA litigation, Lomibao wasn't represented by counsel, nor has AGC proven there was a bona fide dispute. *Evans* is inapplicable

PLAINTIFF'S OPP. TO S.J.
Case No. 2:25-cv-00361-JHC
-11-.
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

Moreover, *Wilson* examines the issue through the light of Plaintiffs who have had their chance to argue their bona fide dispute in front of the Court (the docket contains 127 separate entries); their experience is not equivalent to Lomibao's out of court experience with an un-negotiated severance package and FLSA claims about which there was no bona fide dispute. Ex. B Lomibao Decl. at ¶¶ 3-5. As *Wilson* is not from a superior court and because the Plaintiff's case differs from the *Wilson* plaintiffs in several crucial manners, *Wilson* is neither binding nor persuasive on this issue.

Much like *Wilson*, *Corbett* involves a settlement negotiated by counsel during active litigation of a bona fide dispute (with the Court's heavy participation throughout the process). *Corbett v. Pub. Employees' Ret. Sys.*, 716 F. Supp. 3d 1006 (D. Nev. 2024). While *Corbett* states that "the Ninth Circuit has never established precedent on this question" (regarding judicial approval of FLSA claims), it acknowledged that "[i]n *Seminiano*, the Ninth Circuit held that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *Id.* at 1008 (quoting *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015). While *Corbett* arguably followed a different approach, it did so under circumstances far more likely to protect workers rights.

The position AGC asks this Court to take is even more *avant-garde*. Respectfully, this Court should decline. Nothing in *Corbett* suggests the court would extend its rationale to private settlements that never saw the light of a courtroom, without representation by counsel, and without a judge who could evaluate whether there was a "bona fide dispute" amongst the parties. *See, e.g.*, *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015). Moreover, "[t]he requirement of an adversarial posture between parties to a settlement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protection as a valid settlement of a legal claim." *Sims v. Hous. Auth. Of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).[12] Therefore *Corbett* should not be applied to the current case.

---

[12] The Ninth Circuit has had several recent opportunities to set precedent that FLSA settlements did not require judicial approval but did not to do so. *See, e.g.,* *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452 (9th Cir. 2009). Moreover, as discussed in section I(a), the Ninth Circuit *has* opined on the legality of waiving FLSA rights, which are a necessary

1

2      **ii. Saari v. Subzero Engineering**

Next, AGC urges the Court to follow unpublished, out-of-circuit cases rather than those of

3  the Ninth Circuit. But the Utah case AGC relies upon so heavily refused to rely on out of circuit cases,

4  declaring "the court declines Saari's invitation to rely on the decision of other circuits and instead

5  relies on persuasive authority from recent district court decisions in this circuit." *Saari v. Subzero*

6  *Engineering,* No. 2:20-CV-00849-CMR, 2021 WL 4245300 at *4 (D. Utah Sept. 17, 2021). Even *Saari*

7  recognizes in-circuit caselaw is paramount.

8      Moreover, the *Saari* court's decision regarding FLSA settlements was not, as AGC argued,

9  arising from almost identical facts to the instant case. The *Saari* court summarized the differences

10  nicely: "[t]he undisputed facts show that after Saari alleged he was not reimbursed for certain expenses,

11  the parties negotiated a settlement and executed the Agreement whereby Defendants made a payment

12  of $5,027.59 to Saari in exchange for a release of all claims." *Id.* The *Saari* plaintiff brought a specific

13  concern to his employer regarding money owed to him; he and his employer then engaged in

14  negotiations including that specific concern, and eventually settled their dispute over that concern in

15  exchange for a global release. *Id.* In other words, the *Saari* found plaintiff and defendant had resolved

16  a bona fide dispute pursuant to *Brooklyn Savings.* Lomibao was not engaged in a bona fide dispute with

17  AGC, nor did he negotiate the severance agreement or payment.[13] Ex. B Lomibao Decl. at ¶¶ 3-5.

18      Furthermore, the *Saari* court made sure to point out that the precedent upon which they relied

19  "expressly rejected initiating a civil action *for the sole purpose of requesting court approval* of a private, out-

20  of-court settlement of an individual's FLSA claims." *Id.* at *3. (emphasis added).[14] As the instant case

21

22  _____

23  precursor to determining if courts should or even can approve private out of court settlements of
FLSA claims.

24  [13] AGC has argued that the agreement is valid in part because Plaintiff had a chance to retain an
attorney to review the agreement; however the fact that the Plaintiff read the severance agreement and

25  was given time to review it before signing is immaterial: no amount of review time, or even review by
a lawyer, would have changed the fact that private FLSA waivers, unsupervised by the Department of

26  Labor or the judiciary, are invalid, and that the severance agreement was not signed in resolution of a
bona fide dispute. As such, attorney review would not have made *Saari* applicable or solved the bona

27  fide dispute issue and does not make the contract valid.

[14] Even in determining that individual FLSA settlements did not need approval, the *Saari* court made

28  sure to avoid a blanket ruling and carved out an exception, instructing that "exceptional

PLAINTIFF'S OPP. TO S.J.           -13-.          JOSEPHSON DUNLAP, LLP
Case No. 2:25-cv-00361-JHC                   11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 352-1100

(a) is not in the 10th Circuit; (b) does not involving a bona fide dispute; and c) was not initiated for the sole purpose of requesting court approval of a settlement, *Saari* is inapplicable and unpersuasive.

### iii. Martinez v. Bohls Bearing Equipment Co.

The *Martinez* case cited by AGC involves a plaintiff who sued their employer for unpaid overtime wages. *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 611 (W.D. Tex. 2005). The *Martinez* plaintiff took his concerns to the Texas Workforce Commission who worked with his employer to attempt to rectify the problem (albeit unsuccessfully). *Id.* at 612. *Martinez*, however, differs from the instant case in one crucial way. Much like the key difference in *Saari,* the plaintiff and his employer in *Martinez* were in an active dispute over whether he was owed overtime and if he was paid at the agreed-upon rate. *Id.* at 611-13. The release of claims directly arose from an agreement between the plaintiff and his employer resolving this bona fide dispute. *Id.* That the parties were already in a dispute is critical because the *Martinez* court found "settlements of FLSA claims may [be] entered into between private parties … *where there exists a bona fide dispute as [to] liability*, such as hours worked or compensation received." *Id.* at 633. (emphasis added).[15]

Unlike the *Martinez* plaintiff, AGC and Lomibao were not negotiating over pay with respect to a bona fide dispute; AGC simply presented its standard severance agreement. Ex. B Lomibao Decl. at ¶¶ 3-5.  As the *Martinez* court concluded that private FLSA settlements were only valid when they involved a bona fide dispute, it stands to reason that if Martinez had been in the position of the Plaintiff in this case (in which the payment was not part of a bona fide dispute), the Court likely would not have found his release of claims to be valid. As such not only is *Martinez* not persuasive for AGC's position, but it supports the position of the Plaintiff.

---

circumstances" including, but not limited to, "evidence of malfeasance or overreaching in obtaining a settlement agreement" still required Court approval. *Saari*, 2021 WL 4245300, at *4 (citing *Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-cv-00019 WJ/SCY, 2020 WL 3085921, at *2 (D.N.M. June 10, 2020); quoting *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-NYM, 2018 WL 6056428, at *3 (D. Colo. Nov. 19, 2019)).

[15] The Court also noted that "[t]here certainly exists substantial ground for difference of opinion as the only Circuit Court of Appeals to directly rule on this issue has disagreed with the Court's Order. *See Lynn's Food Stores,* 679 F.2d 1350 (holding FLSA claims may *not* be settled, including where there exists a bona fide dispute as to liability, without the approval of the Department of Labor or the courts)." *Martinez*, 361 F.Supp.2d at 633. (emphasis added).

**E.  PLAINTIFF'S STANDING TO PURSUE CLASS CLAIMS**

AGC cited *Lierboe v. State Farm* to argue Lomibao lacks standing to pursue a class claim. Unlike this case, the *Lierboe* court found the plaintiff did not have a claim regarding the stacking of insurance policies "[b]ecause the Supreme Court of Montana's decision establishes that Lierboe has no stacking claim." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). Here, there is no state court ruling establishing the **in**validity of Lomibao's claims.

Because summary judgment is inappropriate on the waiver of Lomibao's FLSA claims, AGC's argument regarding "standing" necessarily fails. After all, Congress gave every FLSA plaintiff the right to proceed "for and in behalf of himself … and other employees similarly situated." 29 U.S.C.A. § 216(b). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019) (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1117 (10th Cir. 2001)). Because Lomibao's FLSA claim survives, he has standing to bring a collective action.

**F.  THE SEVERANCE AGREEMENT IS ALSO INVALID UNDER WASHINGTON STATE LAW**

**i.  Washington state law prohibits waiver of rights under the WMWA**

"Washington State has a 'long and proud history of being a pioneer in the protection of employee rights.'" *Pellino v. Brink's Inc.,* 164 Wash. App. 668, 684 (2011) (quoting *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wash. 2d 291, 300 (2000). Moreover, in Washington "statutes protecting employee rights must be liberally construed." *Id.* (quoting *Internat'l Ass'n of Fire Fighters, Local 46 v. City of Everett,* 146 Wash.2d 29, 35 (2002)). Importantly, "liberal construction requires that the coverage of [a wage] statute's provisions "be liberally construed [in favor of the employee] and that its exceptions be narrowly confined.'"" *Id.* at 685 (quoting *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees,* 130 Wash.2d 401, 407 (1996)).

Many of Washington's worker protections are codified in the Washington Minimum Wage Act (WMWA) at chapter 49.46 of the Revised Code of Washington (RCW). *Hill v. Xerox Bus. Servs., LLC,* 191 Wash. 2d 751, 756, 426 P.3d 703, 706 (2018). The WMWA requires employees to be compensated at one and a half times their regular rate of pay for hours worked over 40 in a workweek.

RCW 49.46.130. And, "[a]ny agreement between such employee and the employer allowing the employee to receive less than what is due under this chapter shall be no defense to such action." *Id.* at 49.46.090. "The MWA's provisions clearly show that the legislature did not intend for the provisions of the MWA to be bargained away." *McClain v. State*, 34 Wash. App. 2d 247 (2025) (citing RCW 49.46.090; RCW 49.46.110). "And multiple decisions from courts have used language that is consistent with this—explaining MWA rights "cannot be waived" and are "nonnegotiable."" *Id.* (citing *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash.2d 853, 864 (2004)).

      Here, Lomibao sued under the FLSA and WMWA to recover overtime wages due to him by AGC. Doc. 1. In violation of the text and spirit of the WMWA, AGC claims Lomibao waived all rights to those overtime wages through a severance agreement. Under RCW 49.46.090, Washington law does not permit the waiver of rights to overtime; Lomibao simply could not have waived his rights in the severance agreement. Therefore, AGC's claim that he waived his state wage and hour rights must fail.

      **ii.  Overlap of the WMWA and the FLSA**

      Much like the FLSA, the WMWA also prohibits waiver of overtime by employees. *McClain*, 34 Wash. App. 2d at 271 (citing *Hisle*, 151 Wash.2d at 864). The fact the WMWA's protections, such as the requirement that employees be paid for all hours worked, are similar to the FLSA is hardly surprising; the WMWA was based on the FLSA. *Carranza v. Dovex Fruit Co.*, 190 Wash. 2d 612, 619, 416 P.3d 1205, 1210 (2018) (citing *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wash.2d 851, 868, 281 P.3d 289 (2012)). Anticipating possible overlap, the state of Washington has declared that "[i]f there are differences between the Minimum Wage Act and any federal, state, or local laws or rules governing labor standards, the standard more favorable or more protective to the employee is applied." State of Washington Department of Labor, *Payment Of Wages Less Than Minimum Wage— Employer's Liability Es.A.5*, (Feb. 8, 2024).[16] And, "[b]ecause the MWA is based upon the FLSA, federal authority under the FLSA often provides helpful guidance." *Drinkwitz,* 140 Wash. 2d at 298. As such the Court may consider both the FLSA and Washington state law, and default to the law it finds most persuasive, in evaluating the failure of AGC's motion.

---

[16] https://www.lni.wa.gov/workers-rights/_docs/esa5.pdf (last accessed Aug. 2, 2025).

PLAINTIFF'S OPP. TO S.J.           -16-.          JOSEPHSON DUNLAP, LLP
Case No. 2:25-cv-00361-JHC                        11 Greenway Plaza, Suite 3050
                                                  Houston, Texas 77046
                                                     (713) 352-1100

### iii. AGC's severance agreement is void as a matter of public policy in Washington

In Washington, "[e]xculpatory clauses are strictly construed" and "[w]hether exculpatory clauses…violate public policy is a question of first impression in Washington." *Scott By & Through Scott v. Pac. W. Mountain Resort*, 119 Wash. 2d 484, 490-92 (1992). And, "[a] contract provision is void if it violates public policy." *Edenholm v. Flytrap Network Sec., Inc.*, 141 Wash. App. 1011 (2007) (citing *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 753–54, 845 P.2d 334 (1993); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 483, 687 P.2d 1139 (1984); *Makinen v. George*, 19 Wn.2d 340, 354, 142 P.2d 910 (1943)). In the state of Washington,

> When considering whether a contract violates public policy, a court considers such factors as: (1) whether the agreement concerns an endeavor of a type generally thought suitable for public regulation; (2) whether the party seeking to enforce the contract is engaged in performing a service of great importance to the public; (3) whether the party seeking to enforce the contract holds itself out as willing to perform this service for almost any member of the public; (4) whether the party seeking to enforce the contract possesses a decisive advantage of bargaining strength against any member of the public who seeks the services; and (5) whether the party seeking to enforce the contract confronts the public with a standardized contract of adhesion.

*Id.* (numbers added) (quoting *Wagenblast v. Odessa Sch. Dist.*, 110 Wn.2d 845, 851–52, 758 P.2d 968 (1988)). "The more of the foregoing six characteristics that appear in a given exculpatory agreement case, the more likely the agreement is to be declared invalid on public policy grounds." *Wagenblast*, 110 Wash. 2d at 852.

Here, AGC has fulfilled all the criteria in creating a contract that violates public policy in Washington. AGC is a pharmaceutical development and manufacturing firm,[17] an industry which is heavily regulated under the Washington Administrative Code chapter 246-945,[18] fulfilling the first requirement. The production of pharmaceuticals is of great importance to the public (factor 2) and AGC does not give any indication that it is not willing to manufacture prescription drugs for any section of the public (factor 3). As a company spanning 8 locations with teams in three separate

---

[17] https://www.agcbio.com/about (last accessed August 8, 2025).
[18] https://app.leg.wa.gov/WAC/default.aspx?cite=246-945 (last accessed August 8, 2025).

continents,[19] AGC possesses significant bargaining strength in comparison to the employees it subjects to its severance agreements, who are dependent upon those agreements for financial security following the loss of their jobs. And finally, AGC's severance agreement was a typical contract of adhesion: it was drafted by a party of superior bargaining strength (AGC) and, although the contract said it was negotiated, it was in reality based solely on the number of years Lomibao had been working and was not negotiated by the parties. *Delmore v. Ricoh Americas Corp.*, 667 F. Supp. 2d 1129, 1136 (N.D. Cal. 2009); Ex. B Lomibao Decl. at ¶ 5.

Because AGC fulfilled not just some, but all of the *Wagenblast* factors, it violated public policy and is therefore void under Washington law.

### G. Genuine Disputes of Material Fact Preclude Summary Judgment

Although AGC failed to show it is entitled to summary judgment, at most there is a genuine dispute of material fact regarding whether the severance agreement waive Lomibao's rights under state and federal law. In settlement agreements, "[provisions] establishing payment terms and release of claims, are material as a matter of law." *R.J. Armstrong Living Tr. v. Holmes*, No. 3:22-CV-00375-ART-CSD, 2025 WL 973528, at *5 (D. Nev. Mar. 31, 2025). "*See [also] … May v. Anderson*, 119 P.3d 1254, 1258 (Nev. 2005) (release of claims are material in a settlement agreement)." *Id. See also Tribble v. Surface Preparation Sys. Inc.*, No. 6:20-CV-00181-IM, 2023 WL 8828012, at *2 (D. Or. Dec. 21, 2023) (material issues of fact precluded summary judgment regarding the validity of a release of claims); *Smith v. Homes*, No. 3:13-CV-00202-MMDWGC, 2014 WL 4851503, at *12 (D. Nev. Sept. 26, 2014) (denying summary judgment when there were questions of whether the release provision of a contract was valid and enforceable).

And, of course, if the release is not valid, there are numerous material facts at question in this case that would preclude summary judgment. For example, whether Lomibao and putative class members were required to perform work off the clock, how much time they worked off the clock and whether they were paid the overtime money due to them, whether meal breaks were correctly deducted, whether Plaintiff and the putative class members always got a bona fide meal break, whether

---

[19] https://www.agcbio.com/about (last accessed August 8, 2025).

AGC knew or should have known that off-the-clock work, and work during meal breaks, was occurring; and whether AGC correctly calculated the employees' "regular rate" for the purposes of calculating overtime pay, amongst other questions.

### 4. Conclusion

AGC has not proven as a matter of law that its severance agreement validly released Lomibao's statutory wage claims or that he lacks standing to bring them. Thus, AGC's motion for summary judgment should be denied.

### CERTIFICATE OF COMPLIANCE

I hereby certify there are 7,804 words in this memorandum of law in accordance with the Local Rules.

/s/ Travis J. Grefenstette
Travis Grefenstette

Respectfully Submitted,

By: /s/ Michael C. Subit
**Michael A. Josephson**
**Andrew W. Dunlap**
**Travis Grefenstette**
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages. om
adunlap@mybackwages.com
tgrefenstette@mybackwages.com

**Richard J. (Rex) Burch**
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Michael C. Subit**
WSBA #29189
**FRANK FREED SUBIT & THOMAS, LLP**
705 Second Ave., Suite 1200
Seattle, WA 98104
Tel: (206) 682-6711
msubit@frankfreed.com

**Attorneys for Plaintiff**

CERTIFICATE OF SERVICE

This is to certify that on August 8, 2025 a true and correct copy of the foregoing instrument was filed through the Court's electronic case filing system which will serve a copy of this document electronically on all counsel of record.

/s/ *Travis J. Grefenstette*
Travis Grefenstette