1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EUFRONIO LOMIBAO,

              Plaintiff,

      v.

AGC BIOLOGICS, INC.,

             Defendant.

CASE NO. 2:25-cv-00361-JHC

ORDER

## I
### INTRODUCTION

       This matter comes before the Court on Defendant's Motion for Summary Judgment.  Dkt. # 16.  The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law.  The Court has also considered the presentations of counsel at oral argument.  Being fully advised, the Court GRANTS Defendant's Motion (Dkt. # 16) and DISMISSES this action.

## II
### BACKGROUND

       Plaintiff Eufronio Lomibao is a former hourly employee of Defendant AGC Biologics, Inc.  Dkt. # 1 at 3.  Plaintiff alleges that during his employment, Defendant failed to compensate him and other hourly employees for all hours worked over 40 in a workweek, in violation of the

Fair Labor Standards Act (FLSA) and the Washington Minimum Wage Act (WMWA). *Id*. at 2. He also alleges that Defendant willfully withheld earned wages and failed to provide bona fide meal and rest periods to him and other hourly employees, in violation of the Washington Wage Rebate Act (WWRA) and the Washington Industrial Welfare Act (WIWA). *Id*. He thus brings this action on behalf of himself and other hourly employees who worked for Defendant at any time during the past three years through final resolution of this action.[1] *Id*. at 3.

Defendant moves for summary judgment. *See* Dkt. # 16. Defendant does not dispute that Plaintiff was employed with Defendant as an hourly employee between December 2022 and May 2024, or that Plaintiff's employment terminated in May 2024. *See generally id*. Instead, Defendant contends that Plaintiff cannot bring this action because upon termination, Plaintiff was presented with a Separation Agreement and Release (the Agreement) that offered Plaintiff certain benefits, including a severance payment of $7,140 and job placement services, in exchange for a general release of all claims against Defendant. Dkt. # 16 at 2 (citing Dkt. ## 17 at 3; 17-1 at 2–5); *see also* Dkt. # 17-2 at 2.

As pertinent to this Motion, the Agreement[2] states:

> In exchange for the consideration set forth [in this Agreement], . . . Employee hereby unconditionally releases and forever discharges Employer . . . from any and all causes of action, suits, damages, claims, and demands whatsoever, whether known or unknown, suspected or unsuspected, which Employee ever had or now has against the Released Parties, directly or indirectly arising from or relating to Employee's employment with Employer, Employee's separation from employment with Employer, and any other facts, acts, omissions, transactions, or occurrences occurring at any time up through the date on which Employee signs this Agreement, to the fullest extent permitted by law, including but not limited to any and all claims for wages, compensation, employee benefits, and damages arising under: . . . any

---

[1] Plaintiff's proposed collective action for his FLSA claim includes all employees who worked for Defendant. *See* Dkt. # 1 at 3. Plaintiff's proposed class action for his Washington state-law claims is limited to those employees who worked for Defendant in Washington. *See id*. at 4.

[2] As Plaintiff affirms the existence of an agreement and does not dispute that the document at Dkt. # 17-1 is a true and correct copy of Plaintiff's signed Agreement, the Court accepts the document at Dkt. # 17-1 as such.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

local, state, federal or foreign laws relating to employment or termination rights and/or benefits (including, but not limited to, . . . the Fair Labor Standards Act)[.] . . . Employee understands and agrees that this is a total and comprehensive release by Employee of all claims that Employee has against Employer, both known and unknown, even though there may be facts and consequences of facts which are unknown to Employee and/or Employer. Employee represents and agrees that Employee has been fully paid for all hours worked by Employee through the date of this Agreement.

Dkt. # 17-1 at 4.  The seventh page of the Agreement—the signature page—is titled "KNOWING AND VOLUNTARY AGREEMENT."  *Id*. at 8.  It provides that the Employee has carefully read the Agreement and finds it understandable, knows the Agreement's contents, is and has been advised to consult an attorney before signing the Agreement, understands the Agreement's final and binding effects, and has signed the Agreement as a free and voluntary act, among other things.  *Id*.

Defendant also contends that: (1) Plaintiff was provided with up to 45 days to review the Agreement before accepting it; (2) Plaintiff was advised to consult an attorney before signing the Agreement; (3) Plaintiff and Defendant signed the Agreement on May 31, 2024—21 days after Plaintiff was presented with the Agreement; (4) Plaintiff did not revoke his acceptance of the Agreement within 7 calendar days (as provided under the Agreement); and (5) Defendant performed all obligations under the Agreement, paying Plaintiff $7,140 on June 14, 2024 and also providing him with job placement services.  Dkt. # 16 at 3 (citing Dkt. ## 17 at 3; 17-1 at 5, 8; 17-2 at 2).  Defendant thus argues that it is entitled to summary judgment, as the parties have a valid and enforceable contract barring Plaintiff from bringing any employment-related claims against Defendant.  *See generally id.*

ORDER - 3

1

2          Plaintiff does not dispute any of these factual allegations.[3]  *See generally* Dkt. ## 1 & 20.

3   Instead, Plaintiff opposes summary judgment on the grounds that the Agreement does not bar

4   this action because: (1) the FLSA and WMWA prohibit waiver of employees' rights, thereby

5   invalidating any contract provision that purports to waive an employee's rights under either

6   statute; and (2) even if an employee could waive their rights under state or federal law by

7   contract, the Agreement's release of Plaintiff's claims is void for public policy or otherwise

8   invalid and unenforceable.  *See generally* Dkt. # 20.[4]

9          After Defendant's Motion for Summary Judgment was fully briefed, Defendant moved to

10  stay discovery pending resolution of its summary judgment motion.  Dkt. # 24.  Given the nature

11  and scope of Defendant's summary judgment arguments, the Court granted Defendant's request

12  to stay discovery pending resolution of the Motion for Summary Judgment.  Dkt. # 30 at 5.  Oral

13  argument was held earlier today, February 5, 2026, and Defendant's Motion for Summary

14  Judgment is now ripe for decision.

15

16

17

18  _____

19      [3] The Court notes that there are many disputed facts within the broader case.  But Plaintiff does
    not appear to contest any of the pertinent factual assertions raised by Defendant's Motion, such as the
20  existence of a settlement agreement, the Agreement's contents, or Defendant's description of the
    circumstances surrounding its execution.  *See generally* Dkt.
21      [4] Plaintiff also requests that the Court strike or disregard Defendant's evidence at Dkt. # 22 as
    improperly raised for the first time in a reply brief.  *See generally* Dkt. # 23.  But as the Court does not
22  rely on Defendant's evidence at Dkt. # 22 to resolve this Motion, *see* part III.B below, it also need not
    reach this issue.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not
23  consider arguments raised for the first time in a reply brief."); *see also SiteLock LLC v. GoDaddy.com
    LLC*, 2021 WL 50453, at *5 (D. Ariz. Jan. 6, 2021) (Because a district court has "discretion to disregard
24  arguments and evidence raised for the first time in the reply brief[,] . . . rather than strike any new
    arguments and evidence that were improperly raised for the first time in [the] reply, the Court will simply
    disregard them.").

ORDER - 4

1

2

### III
#### DISCUSSION

A.    Summary Judgment Standards

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they are entitled to prevail as a matter of law on all claims for which they seek summary judgment.  *See Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a factual dispute is "genuine" if "there is sufficient evidence for a reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *id.*).

If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor.  *See Celotex*, 477 U.S.at 324; *see also Anderson*, 477 U.S. at 250.  Although a court must draw all "justifiable inferences" in favor of the nonmoving party, "[t]he mere existence of a scintilla of evidence . . . will be insufficient[,]" and missing facts will not be presumed. *Anderson*, 477 U.S. at 252, 255; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  If the nonmoving party does not meet its burden, the court must grant summary judgment to the movant.  *See* Fed. R. Civ. P. 56(a)

B.    Analysis

Defendant argues that it is entitled to summary judgment because there is no genuine dispute as to any material fact that Plaintiff's individual claims under the FLSA, WMWA,

WWRA, and WIWA are barred by the Agreement.  Dkt. # 16 at 5.  It also argues that it is entitled to summary judgment on Plaintiff's collective action and class claims, as Plaintiff released all his individual claims and thus lacks standing to pursue any of his putative class or collective action claims.  *Id*.  For the reasons below, the Court grants summary judgment and dismisses Plaintiff's action in full.

       1.      Plaintiff's Individual Claims under the FLSA

Defendant contends that the Agreement bars Plaintiff's FLSA claim, as the Agreement expressly releases all of Plaintiff's FLSA claims against Defendant and such a release is valid under federal law.  *See* Dkt. # 16 at 5.  Plaintiff responds as follows: (1) FLSA rights cannot be waived by contract, thus rendering the Agreement invalid as to this claim; (2) even if FLSA rights could be waived by contract, such a waiver requires a bona fide dispute and approval by a court or the Department of Labor (DOL), neither of which occurred here; and (3) irrespective of these issues, the Court should still deny summary judgment because "at most there is a genuine dispute of material fact regarding whether the severance agreement waive[d] [Plaintiff's] rights under state and federal law."  *See* Dkt. # 20 at 9, 12, 14, 25.

The Court notes that the caselaw regarding waiver of FLSA rights via private settlement agreements is hardly perspicuous.  This is particularly true in the Ninth Circuit, where district courts (and the Ninth Circuit itself) have not adopted a uniform approach to this issue.  The Court thus organizes its analysis around these questions: (a) whether FLSA rights can ever be waived by contract; (b) if so, under what circumstances should an agreement waiving FLSA rights be considered valid; and (c) if the Court does not invalidate the Agreement on FLSA waiver grounds, whether any genuine issues of material fact preclude summary judgment.

1              a.      Can FLSA rights ever be waived by contract?

2         Plaintiff's first argument is that the Agreement is invalid as to his FLSA claim because

3    the law "is unequivocal: FLSA rights 'cannot be abridged by contract or otherwise waived.'"

4    Dkt. # 20 at 9 (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 740

5    (1981). He cites various Supreme Court and Ninth Circuit cases that contain language

6    suggesting that FLSA rights cannot be waived by contract.[5] *See id*. at 9–10. He also cites many

7    Ninth Circuit district court opinions[6] that reiterate this message, as well as guidance from the

---

[5] *See, e.g.*, *Barrentine*, 450 U.S. at 740 ("FLSA rights cannot be abridged by contract or otherwise waived."); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."); *Parth v. Pomona Valley Hosp. Med. Ctr*., 630 F.3d 794, 802 n.2 (9th Cir. 2010) ("[A]n employee may not waive his or her rights under the FLSA, and agree to a pay plan that violates the FLSA."); *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) ("FLSA rights cannot be waived[.]"); *Loc. 246 Util. Workers Union of Am. v. S. California Edison Co*., 83 F.3d 292, 297 (9th Cir. 1996) ("The minimum wage and overtime provisions of the [FLSA] are guarantees to individual workers that may not be waived through collective bargaining."); *Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010) ("[E]mployees cannot waive the protections of the FLSA, nor may labor organizations negotiate provisions that waive employees' statutory rights under the FLSA." (internal citations omitted)); *Collins v. Lobdell*, 188 F.3d 1124, 1127–28 (9th Cir. 1999) ("Where employers and employees reach an agreement that expressly violates the FLSA or is silent on an issue and the employer takes action, which violates the FLSA, employees may still bring actions to protect rights provided for in the FLSA without exhausting remedies established in the agreement.").

[6] *See, e.g.*, *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) ("An employee's right to a minimum wage and to overtime pay under the FLSA is nonwaivable; thus FLSA rights cannot be abridged by contract or otherwise waived[.]"); *Wagner v. Cnty. of Inyo*, 2018 WL 5099761, at *1 (E.D. Cal. Oct. 18, 2018) ("[A]n employee cannot waive claims under the FLSA[.]"); *Miranda v. City of Ceres*, 2020 WL 5495260, at *2 (E.D. Cal. Sept. 11, 2020), *report and recommendation adopted*, 2020 WL 7319523 (E.D. Cal. Dec. 11, 2020) (same); *Zako v. Hamilton Co*., 2020 WL 406376, at *3 (D. Nev. Jan. 24, 2020) ("The FLSA grants individual employees broad access to the courts and permits an action to recover minimum wages, overtime compensation, liquidated damages, or injunctive relief."); *Sifferman v. Sterling Fin. Corp.*, 2014 WL 28854, at *2 (W.D. Wash. Jan. 2, 2014) ("FLSA rights cannot be abridged by contract . . . [and] waiver is not a defense to overtime claims under the FLSA."); *Khadera v. ABM Indus. Inc.*, 2012 WL 581402, at *3 (W.D. Wash. Feb. 21, 2012) ("[E]mployees may not waive their rights under . . . the FLSA[.]"); *Prakash v. Savi Techs., Inc*., 2011 WL 2414349, at *3 (W.D. Wash. June 10, 2011) ("[C]ourts have consistently held that an employee cannot waive his or her rights under the FLSA[.]"); *Cunningham v. Mission Support All., LLC*, 2019 WL 13201913, at *8 (E.D. Wash. July 22, 2019) ("'FLSA rights cannot be abridged by contract or otherwise waived' and 'congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement.'" (quoting *Barrentine*, 450 U.S. at 740–41)); *Spokane Valley Fire Dep't v. Int'l Ass'n of Fire Fighters AFL-CIO Loc. 3701*, 2019 WL 1748515, at *4 (E.D. Wash. Apr. 18, 2019) ("'[E]mployees cannot waive the protections of the FLSA.'" (quoting *Gordon*, 627 F.3d at 1095)).

DOL, namely in the form of statements from an amicus brief submitted by the Secretary of Labor in *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019). *See id.* at 10–11.

While the Court acknowledges that Plaintiff's cited authorities contain language suggesting that FLSA rights can never be waived by contract, it notes that many of these same cases either explicitly or implicitly indicate that FLSA rights *can* be waived by contract, at least in some situations.[7]  It also notes that many of Plaintiff's cited cases involve collective bargaining agreements or other contracts that do not resemble the Agreement here,[8] and/or concern issues that are entirely unrelated to whether FLSA rights may ever be waived by

---

[7] *See, e.g.*, *McKeen-Chaplin*, 2012 WL 6629608, at *2 (explaining the two ways that an FLSA claim can be settled); *Wagner*, 2018 WL 5099761, at *8 (approving a FLSA settlement agreement); *Miranda*, 2020 WL 5495260, at *7 (same); *Zako*, 2020 WL 406376, at *5 (approving a FLSA settlement agreement in part); Brief for Secretary of Labor as Amici Curiae Supporting the District Court's Decision, *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019) (No. 17-3388) (arguing that FLSA rights cannot be waived by private settlement agreement but *can* be settled if the agreement is supervised by the DOL or approved by a court).

Many of Plaintiff's cited cases also cite or otherwise rely on *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), or *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), for the proposition that FLSA rights are non-waivable.  But in *O'Neil*, the Supreme Court explicitly stated that it was not determining "what limitation, if any, [the FLSA] places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement."  324 U.S. at 714.  And in *Gangi*, the Supreme Court explicitly stated that it was not considering "the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment."  328 U.S. at 115.  These cases thus cannot be fairly read (or cited) for the proposition that FLSA claims can never be waived by contract.

[8] *See, e.g.*, *Barrentine*, 450 U.S. at 745 (holding that an employee's FLSA claim in federal court is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures set forth by their collective bargaining agreement); *Loc. 246 Util. Workers*, 83 F.3d at 297 (holding that employees subject to a collective bargaining agreement are not required to exhaust their contractual remedies before bringing an FLSA claim in federal court); *Collins*, 188 F.3d at 1128 (same); *Parth*, 630 F.3d at 802 (upholding a pay plan under the FLSA that resulted from a bargained-for exchange between an employer and an employee union); *Gordon*, 627 F.3d at 1095 (stating that neither a conditional offer nor a collective bargaining agreement can limit an employee's right to receive at least the federal minimum wage); *Cunningham*, 2019 WL 13201913, at *8 (stating that a collective bargaining agreement "does not render the FLSA's protections inoperative"); *Spokane Valley*, 2019 WL 1748515, at *5 (upholding a collective bargaining agreement that implements a FLSA exemption); *FLSA Hours Worked Advisor, Collective Bargaining Agreements*, U.S. Department of Labor elaws Advisors, https://webapps.dol.gov/elaws/whd/flsa/hoursworked/screen1c.asp (last visited Jan. 23, 2026) (setting forth the FLSA Hours Worked Advisor for collective bargaining agreements).

contract.[9]  The Court thus concludes that  none of Plaintiff's cited language amounts to binding

authority on the non-waivability of FLSA rights.[10]  There is also nothing in the text of the FLSA

that indicates that waiver is prohibited, nor does Plaintiff (or any of their cited cases) advance

such a textual argument.  *See* 29 U.S.C. §§ 201–219; *see also* Dkt. # 20.[11]  The Court is thus

unaware of any binding authority that would hold, or even strongly imply, that waiver of FLSA

rights via contract is categorically prohibited.

Without such authority, the Court is not inclined to recognize a categorical ban on waiver

of FLSA rights via contract, especially when prudential concerns and other public policies

counsel against such a prohibition.[12]  The Court thus declines Plaintiff's invitation to conclude as

a matter of law that an employee can never waive their FLSA rights via contract.  It likewise

---

[9] *See, e.g.*, *Genesis Healthcare*, 569 U.S. at 69 (considering whether a plaintiff's FLSA collective action claims are justiciable after their individual claims were mooted); *Parth*, 630 F.3d at 797 (considering whether an employer can reduce pay rates under the FLSA when changing its shift schedule to accommodate its employees' scheduling desires); *Williams*, 87 F.3d at 1065 (considering whether the plaintiff is an "employee" for purposes of the FLSA); *Loc. 246 Util. Workers*, 83 F.3d at 297 (considering whether employees need to exhaust their contractual remedies under a collective bargaining agreement before bringing a FLSA suit in federal court); *Gordon*, 627 F.3d at 1095 (considering whether a training reimbursement agreement, which caused an employee to receive less than the federal minimum wage during their final workweek, violated the FLSA); *Cunningham*, 2019 WL 13201913, at *1 (considering whether certain employees are exempt from the FLSA's overtime pay rule and how such overtime will be calculated); *Khadera*, 2012 WL 581402, at *3 (considering whether the "avoidable consequences" defense applies); *Prakash*, 2011 WL 2414349, at *3 (considering whether a certain employee is an "exempt employee" under the FLSA); *Spokane Valley*, 2019 WL 1748515, at *1 (same).

[10] The Court also notes that district court opinions, as well as DOL statements from rejected amicus briefs in out-of-circuit cases, have no binding effects on this Court.

[11] Most court opinions that state that FLSA rights are non-waivable do so based on congressional intent, not the text of the FLSA itself.  *See, e.g.*, *Barrentine*, 450 U.S. at 745 (concluding that a provision in a collective bargaining does not bar the employee's FLSA claim because "Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court"); *O'Neil*, 324 U.S. at 705–07 (examining congressional intent behind the FLSA but noting that "[n]either the statutory language, the legislative reports nor the debates" indicate that waiver of certain FLSA rights was specifically considered or resolved by Congress).

[12] *See, e.g.*, *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 461–62 (9th Cir. 1989) ("[P]ublic policy favors voluntary settlement of [employment claims]."); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("[E]nforceability of [settlement] agreements is favored in the law."); *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, at *4 (E.D. Pa. July 12, 2022) (discussing policy reasons to permit employees and employers to privately settle FLSA claims); *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 630 (W.D. Tex. 2005) (same).

declines Plaintiff's request to invalidate the Agreement's release of Plaintiff's FLSA claims on this basis.

              b.      Under what circumstances should an agreement waiving FLSA rights be considered valid?

Plaintiff argues that to legitimately release one's FLSA claims by contract, the agreement must resolve a bona fide dispute and be subject to court approval or DOL supervision. *See* Dkt. # 20 at 12–14. He thus argues that the Agreement's release of all his FLSA claims against Defendant is invalid, as there was no bona fide dispute and the parties' settlement was not subject to court approval or DOL supervision. *See id*. Defendant responds that the Agreement's release is valid, as there was a bona fide dispute about the wages that Plaintiff was owed and, per recent court decisions, DOL supervision or court approval is not required for a FLSA settlement agreement to be valid. *See* Dkt. ## 16 at 6–9; 21 at 5–12.

As for the bona fide dispute issue, it is undisputed that a valid FLSA release must be "given in settlement of a bona fide dispute between employer and employee." *O'Neil*, 324 U.S. at 703; *see also* Dkt. ## 20 at 12; 21 at 6. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Chery v. Tegria Holdings LLC*, 2024 WL 5009036, at *6 (W.D. Wash. Dec. 6, 2024) (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citation and quotation marks omitted)). In other words, "[t]here must be some doubt that the plaintiffs would succeed on the merits through litigation of their FLSA claims." *Selk*, 159 F. Supp. 3d at 1172 (cleaned up and citations omitted). Courts in this Circuit have found bona fide disputes where there are disputed issues of FLSA coverage and potential liability, including the amount of overtime hours

1    an employee worked and how to determine the proper amount of compensation owed.[13]  More

2    generally, courts conclude that there is a bona fide dispute so long as an employee advances a

3    facially meritorious claim and the defendant contests or denies liability.[14]

4        Here, the Court concludes that there was a bona fide dispute at the time the Agreement

5    was executed.  Plaintiff alleges that during his employment, he was forced to work "off the

6    clock" and was not properly compensated for those hours.  Dkt. # 1 at 6–10.  The Complaint also

7    indicates that Plaintiff was aware of this issue before his employment was terminated, i.e., before

8    the Agreement was signed.  *See, e.g.*, *id.* at 8 ("[Plaintiff] and other Hourly Employees

9    complained to their supervisors, HR, and/or AGC's management about being forced to work 'off

10   the clock[.]'").  And the record indicates that Defendant denied such a claim when the

11   Agreement was entered into, as Defendant presented the document to Plaintiff for execution and

12   it stated, "Employee verifies that … Employee has been paid in full and received all

13   compensation and benefits Employee earned by virtue of employment with Employer[.]"  Dkt. #

14   17-1 at 2.  There is also no indication in the record that Defendant conceded that overtime wages

15   were owed.  At the time the Agreement was executed, then, there were disputed issues regarding

16   Defendant's potential liability under the FLSA, including the amount of overtime hours Plaintiff

---

[13] *See, e.g.*, *McKeen-Chaplin*, 2012 WL 6629608, at *2 (concluding a bona fide dispute exists regarding whether certain workers are non-exempt "production" workers, whether liquidated damages and the three-year statute of limitations for willful violations of the FLSA are available, and the amount of overtime hours that the employees worked); *Selk*, 159 F. Supp. 3d at 1174 (concluding a bona fide dispute exists regarding whether the defendant's rounding practices undercompensated employees and whether the defendant needed to include a certain discount when calculating the employees' regular rate of pay).

[14] *See, e.g.*, *Chery*, 2024 WL 5009036, at *6 ("[A] bona fide dispute is evidenced by [the plaintiff's] facially meritorious claim and [the defendant's] denial of liability."); *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1006 (N.D. Cal. 2025) ("[T]he Court finds that there was and continues to be a bona fide dispute in this case because the defendant contests FLSA liability."); *Selk*, 159 F. Supp. 3d at 1174 ("In light of these contending views on issues central to the case, and the fact that [the plaintiffs] are not clearly entitled to the compensation they seek, the Court is convinced that that this case involves a bona fide dispute between the parties.").

ORDER - 11

worked and how much compensation he was owed.  This suffices as a bona fide dispute for FLSA purposes.

Plaintiff's evidence fails to demonstrate that there was no bona fide dispute.  While Plaintiff presents compelling evidence that there was no "active dispute" regarding Plaintiff's overtime hours or compensation in May 2024, *see* Dkt. # 20 at 12–13 (citing Dkt. ## 17 at 2; 17-1 at 2; 20-2 at 2–3), "active dispute" is not the applicable standard.  And the Court cannot conclude that there was no bona fide dispute based on Plaintiff's evidence of no "active dispute" and Plaintiff's unsupported statement that "there was no bona fide dispute at the time the severance agreement was presented to [Plaintiff]."  *See id.*; *see also Bethune v. City of Washougal*, 642 F. Supp. 3d 1246, 1258 (W.D. Wash. 2022) ("At summary judgment a court may not accept unsupported allegations in a party's briefing as valid evidence.").  Absent this evidence, the Court cannot find a genuine issue of material fact as to whether there was a bona fide dispute, i.e., whether there were disputed issues regarding Defendant's potential liability under the FLSA.  It thus declines Plaintiff's invitation to invalidate the Agreement on bona fide dispute grounds.

As for the DOL supervision or court approval issue, the Court notes that federal courts, particularly those in this Circuit, have reached conflicting outcomes as to whether DOL supervision or court approval is required for a FLSA settlement to be valid.  Because the Ninth Circuit has not definitively ruled on this question,[15] district courts in this Circuit have looked to out-of-circuit authority to help resolve this issue.  As explained by a sister court:

---

[15] The Court notes that the Ninth Circuit has stated in one opinion that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court."  *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (unpublished).  But this statement was made in connection with the Ninth Circuit affirming denial of a plaintiff's request to settle and dismiss his FLSA claims, where the request to dismiss was drafted by a legal assistant who had previously worked for the defendant

Outside the Ninth Circuit, there is a split of authority on this issue. . . . [T]he Eleventh Circuit has held that "there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees"—either "under the supervision of the Secretary of Labor" or, "in the context of suits brought directly by employees against their employer to recover back wages for FLSA violations," by "present[ing] to the district court a proposed settlement" and asking the court to "enter a stipulated judgment after scrutinizing the settlement for fairness." Similarly, the Second Circuit has held that judicial approval—or, alternatively, approval by the [DOL]—is required before an individual FLSA claim may be dismissed with prejudice. In contrast, the Fifth Circuit has held that "parties may privately settle a FLSA claim . . . where there exists a bona fide dispute as to liability." The law in other circuits appears to be unsettled. . . . In [these circuits], district courts often assume, without discussion, that they must approve FLSA settlements.

*Evans v. Centurion Managed Care of Arizona LLC*, 686 F. Supp. 3d 880, 882–83 (D. Ariz. 2023) (internal citations omitted). Accordingly, many courts in this Circuit have adopted the approach used by the Second and Eleventh Circuit and require DOL supervision or court approval of FLSA settlements.[16] In contrast, many other Ninth Circuit courts, particularly in more recent

---

and there was no counsel present for either party. Additionally, the opinion in *Seminiano* was not published, and unpublished Ninth Circuit opinions are not binding on lower courts. *See* 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of [the Ninth Circuit] are not precedent[.]"). The Ninth Circuit thus cannot be said to have "held that FLSA claims may not be settled without approval of either the Secretary of Labor or a district court." *See* Dkt. # 20 at 19 (quoting *Corbett v. Pub. Emps.' Ret. Sys.*, 716 F. Supp. 3d 1006, 1008 (D. Nev. 2024)).

[16] *See, e.g.*, *Chery*, 2024 WL 5009036, at *6 ("[A] settlement of FLSA [collective action] claims requires court approval."); *Cavazos v. Salas Concrete Inc.*, 2022 WL 506005, at *5 (E.D. Cal. Feb. 18, 2022) ("Because an employee cannot waive claims under the FLSA, the claims may not be settled without court approval or Department of Labor supervision."); *Selk*, 159 F. Supp. 3d at 1172 ("[C]laims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court."); *Zako*, 2020 WL 406376, at *3 ("[A]ny settlement of an FLSA collective action requires the supervision of either the secretary of labor or the district court."); *Duarte v. MZR Inc.*, 2010 WL 11586755, at *3 (N.D. Cal. July 8, 2010) ("To achieve a waiver of rights under the FLSA in a settlement for payment of unpaid overtime wages, three requirements must be satisfied: (1) the employee must agree to accept payment; (2) the employee must receive payment in full; and (3) the payment must be supervised by the Secretary of Labor."); *Miranda*, 2020 WL 5495260, at *2 ("[A]bsent supervision by the Secretary of Labor, settlement of collective action claims under the FLSA requires court approval."); *Kerzich v. Cty. of Tuolumne*, 2019 WL 1755496, at *2 (E.D. Cal. Apr. 19, 2019) ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court."); *Wagner*, 2018 WL 5099761, at *1 (same); *Goudie v. Cable Commc'ns, Inc.*, 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009) ("There are only two ways by which FLSA back wages claims may be settled by employees."); *Fisher v. Geocon Consultants, Inc.*, 2009 WL 10692657, at *3 (E.D. Cal. Dec. 9, 2009) ("[C]ourts have approved

1    years, have concluded that such a requirement is not mandated by the text of the Act and is also

2    prudentially unwise.[17]  These courts have thus rejected the proposition that a FLSA settlement is

3    invalid unless it has been subjected to DOL supervision or court approval.[18]

4

5    _____

    of settlements of FLSA claims in only the limited circumstances provided for by the statute, namely: (1)
6    pursuant to a judicially approved stipulated judgment in an action brought by an employee against his
    employer and (2) where the Secretary of Labor supervises the payment in full of a settlement agreement
7    reached between an employer and employee."); *McKeen-Chaplin*, 2012 WL 6629608, at *2 ("[A]n FLSA
    claim can be settled in two ways."); *Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 385
8    (E.D. Cal. 2018) ("[A]n FLSA claim may not be settled without supervision of either the Secretary of
    Labor or a district court." (internal quotation marks and citations omitted)).
9        [17] *See, e.g.*, *Evans*, 686 F. Supp. 3d at 884 ("[N]othing in the text of the FLSA indicates that
    judicial approval of settlement agreements is required and other features of the statutory text strongly
10   suggest that Congress did not intend to create such a requirement."); *Wilson v. Maxim Healthcare Servs.*,
    *Inc.*, 2017 WL 2988289, at *2 (W.D. Wash. June 20, 2017) (declining to follow the approach set forth by
11   the Eleventh Circuit and concluding that FLSA settlements do not require court approval).
            District courts in other circuits likewise permit parties to settle FLSA claims without court
12   approval or DOL supervision.  *See, e.g.*, *Saari v. Subzero Eng'g*, 2021 WL 4245300, at *4 (D. Utah Sept.
    17, 2021) ("[J]udicial approval of the [settlement agreement] was not required for [the plaintiff] to release
13   his claims under the FLSA."); *Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 643 (W.D. Ky.
    2022) ("Faced with a statute that doesn't require court approval before dismissal, and a Rule that
14   presumes the opposite, the Court concludes that FLSA is not an 'applicable federal statute' under Rule
    41(a)(1)(A) that prevents dismissal at the parties' behest."); *Alcantara*, 2022 WL 2703610, at *5 ("Parties
15   to an FLSA suit can settle their claims out of court before they file a suit, and they can still do so once
    they file the suit."); *Walker v. Marathon Petrol. Corp.*, 684 F. Supp. 3d 408, 412 (W.D. Pa. 2023)
16   ("Judicial approval is not required for FLSA settlement agreements."); *Corbett*, 716 F. Supp. 3d at 1009
    ("[J]udicial approval is not required for settling FLSA claims."); *Ruiz v. Act Fast Delivery of Colorado,
17   Inc.*, 2017 WL 11545275, at *3 (D. Colo. Jan. 9, 2017); ("[T]he parties here may have sought court
    approval of their settlement because they believed such approval was required for the agreement to be
18   effective . . . [but] such approval is not required."); *Fails v. Pathway Leasing LLC*, 2018 WL 6046428, at
    *3 (D. Colo. Nov. 19, 2018) ("[J]udicial review of bona fide FLSA disputes is not required."); *Martinez*,
19   361 F. Supp. 2d at 633 ("The Court has ruled that settlements of FLSA claims may [be] entered into
    between private parties without intervention or supervision of the Department of Labor or the courts[.]").
20       [18] *See, e.g.*, *Evans*, 686 F. Supp. 3d at 887 (denying the parties' joint motion to approve
    settlement because parties may voluntarily dismiss FLSA actions and settle FLSA claims without court
21   approval); *Wilson*, 2017 WL 2988289, at *2 (declining the plaintiffs' request to submit copies of the 135
    individual settlement agreements for *in camera* review and approval because the plaintiffs "remain free to
22   dismiss their wage claims voluntarily pursuant to Fed. R. Civ. P. 41(a) in light of their individual
    settlement agreements"); *Saari*, 2021 WL 4245300, at *4 (enforcing a FLSA settlement agreement that
23   released the employee's claims, even though the settlement was not subject to DOL supervision or
    judicial approval); *Martinez*, 361 F. Supp. 2d at 633 (same); *Askew*, 620 F. Supp. 3d at 643 (dismissing a
24   FLSA action, without judicial approval, under Rule 41); *Alcantara*, 2022 WL 2703610, at *5 (permitting
    parties in a FLSA suit to privately settle and voluntarily dismiss their case under Rule 41without
    receiving court approval); *Walker*, 684 F. Supp. 3d at 417 (same); *Corbett*, 716 F. Supp. 3d at 1010
    (denying the parties' joint motion to approve settlement because parties may voluntarily dismiss or settle
    FLSA claims without court approval); *Ruiz*, 2017 WL 11545275, at *6 (same); *Fails*, 2018 WL 6046428,
    at *4 (same).

Although Plaintiff urges the Court to follow the first approach, the Court is more persuaded by the second approach—DOL supervision or court approval is *not* required for a FLSA settlement to be valid. While the Court acknowledges that in some situations, this approach may stray from the FLSA's purpose, it also believes that such an approach is wholly consistent with the text of the FLSA, its legislative history, and all binding authority on this subject. It also concludes that such an approach is more aligned with broader public policy goals, such as the law's preference for allowing parties to voluntarily settle their claims without court involvement. *See Stroman*, 884 F.2d at 461–62. The Court is also not persuaded by Plaintiff's attempt to distinguish Defendant's cited cases on the grounds that the parties in those cases were actively embroiled in litigation, as the reasoning that supported the courts' decisions in those cases equally applies to the issue of court approval of private out-of-court settlements, such as the one at issue here. The Court thus rejects Plaintiff's request to invalidate the Agreement simply because it was not subject to court approval or DOL supervision.

Having concluded that the Agreement is not invalid on bona fide dispute or approval grounds, the Court finds no other basis to invalidate the Agreement's release of Plaintiff's FLSA claims.[19]

   c.  Do any genuine issues of material fact preclude summary judgment?

Plaintiff's final argument is that even if the Court accepts Defendant's arguments and declines to invalidate the Agreement, it should still deny summary judgment because "at most

---

[19] The Court notes that there are other circumstances that could allow a court to invalidate a private FLSA settlement agreement. *See e.g.*, *Goudie*, 2009 WL 88336, at *1 (suggesting that a court can invalidate a FLSA settlement agreement that stems from fraud, overreach, or collusion); *Fails*, 2018 WL 6046428, at *3 (suggesting that a court should review a FLSA settlement if not all opt-in plaintiffs can be contacted or if there is evidence of malfeasance or overreaching in obtaining the settlement agreement). But as Plaintiff does not argue that the Agreement is invalid on any other grounds, nor has Plaintiff provided any evidence of fraud, overreach, or another contract-based defense, *see generally* Dkt., the Court need not address these alternative bases for invalidation.

ORDER - 15

there is a genuine dispute of material fact regarding whether the severance agreement waive[d] [Plaintiff's] rights under state and federal law." Dkt. # 20 at 25.  In making this argument, Plaintiff asserts that whether a party has validly released their claims in a settlement agreement is "material."  He thus argues that summary judgment is precluded here, as there is a genuine dispute over a "material" fact, i.e., whether the Agreement validly released his claims.

But Plaintiff's argument is misguided.  His cited cases conclude that summary judgment is inappropriate because there are threshold facts missing, thereby preventing the courts from determining whether a valid and enforceable contract existed between the parties.[20]  In contrast, here it is undisputed that Plaintiff signed an Agreement that explicitly released his right to bring any FLSA claims against Defendant.  Plaintiff also points to no disputed or missing facts in the record that would suggest that the parties did not form such a contract.  Instead, Plaintiff opposes the validity of the Agreement only on legal grounds.  But as disputed issues of law do not preclude summary judgment, the Court declines to deny summary judgment simply because Plaintiff has demonstrated a genuine legal dispute regarding waivability of FLSA rights.[21]

The Court thus concludes that Defendant has successfully shown that there is no genuine dispute as to any material fact that Plaintiff's FLSA claim is barred by the Agreement and that Defendant is entitled to judgment as a matter of law.  It thus GRANTS Defendant summary judgment and dismisses Count I (Failure to Pay Overtime Under the FLSA).

---

[20] *See, e.g.*, *R.J. Armstrong Living Tr. v. Holmes*, 2025 WL 973528, at *4 (D. Nev. Mar. 31, 2025) (considering whether either party materially breached the settlement agreement); *May v. Anderson*, 119 P.3d 1254, 1258 (Nev. 2005) (considering whether a settlement agreement was actually formed); *Tribble v. Surface Preparation Sys. Inc.*, 2023 WL 8828012, at *8 (D. Or. Dec. 21, 2023) (considering whether a transaction could validly release the plaintiff's security interest in a particular set of assets); *Smith v. Homes*, 2014 WL 4851503, at *10 (D. Nev. Sept. 26, 2014) (considering the validity of a release term that was added to the written agreement after mediation and was not included in the recitation of settlement terms to the plaintiff at the end of mediation).

[21] Although the Court is addressing this argument in connection with Plaintiff's FLSA claims, the same logic applies to all of Plaintiff's claims.  It thus rejects Plaintiff's argument at Dkt. # 20 at 25 as to his FLSA claims *and* his state-law claims, discussed in parts III.B(2)–(3) below.

1

2        2.      Plaintiff's Individual Claims under the WMWA

3        Defendant contends that Plaintiff's WMWA claim is barred, as the Agreement validly

released all of Plaintiff's claims for wages, compensation, or damages under state law, including

4   his claim for failure to pay overtime under the WMWA.  *See* Dkt. ## 16 at 5; 21 at 2.  Plaintiff

5   responds that his WMWA claim is not barred, as: (1) Washington state law prohibits waiver of

6   rights under the WMWA; and (2) the Agreement is void as a matter of public policy.  Dkt. # 20

7   at 22–25.

8        The WMWA, codified at Revised Code of Washington (RCW) Chapter 49.46, sets forth

9   various minimum wage requirements and labor standards for employment within the state of

10  Washington.  *See generally* RCW 49.46.  One such requirement is that, unless a listed exception

11  applies, "no employer shall employ any of [their] employees for a workweek longer than forty

12  hours unless such employee receives compensation for [their] employment in excess of the hours

13  above specified at a rate not less than one and one-half times the regular rate at which he or she

14  is employed."  RCW 49.46.130.  The Act also provides that "[a]ny employer who pays any

15  employee less than the amounts to which such employee is entitled under or by virtue of this

16  chapter, shall be liable to such employee affected for the full amount due to such employee under

17  this chapter[.]"  RCW 49.46.090(1).  And "[a]ny agreement between such employee and the

18  employer allowing the employee to receive less than what is due under this chapter shall be no

19  defense to such action."  *Id*.

20       According to Plaintiff, these statutory provisions thus prohibit an employee from waiving

21  their rights under the WMWA.  *See* Dkt. # 20 at 22.  In support of this argument, Plaintiff cites

22  *McClain v. State*, 34 Wash. App. 2d 247, 567 P.3d 1109 (2025).  In *McClain*, the Court stated,

23  "The [W]MWA's provisions clearly show that the legislature did not intend for the provisions of

24  the [W]MWA to be bargained away. And multiple decisions from courts have used language that

is consistent with this—describing that [W]MWA rights 'cannot be waived' and are 'nonnegotiable.'" *Id.* at 271 (internal citations omitted). But *McClain*, and the cases cited in therein, concern waiver of WMWA rights via collective bargaining agreements in the context of preemption under § 301 of the Labor Management Relations Act of 1947 (LMRA). *See id.* at 264; *see also Hisle v. Todd Pac. Shipyards Corp.*, 151 Wash. 2d 853, 864, 93 P.3d 108 (2004); *United Food & Com. Workers Union Loc. 1001 v. Mut. Ben. Life Ins. Co.*, 84 Wash. App. 47, 50, 925 P.2d 212 (1996), *abrogated by Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wash. 2d 824, 991 P.2d 1126 (2000). The Court is thus unconvinced that *McClain*'s language on waiver automatically applies to the issue of whether an employee can release their WMWA claims via a private settlement agreement.

Plaintiff also argues that waiver is prohibited under the WMWA because the WMWA is modeled off the FLSA and so, like the FLSA, it should be understood to prohibit waiver. Dkt. # 20 at 23. But as discussed in part III.B(1), the Court does not conclude that waiver is categorically prohibited under the FLSA. And even if it were, the "[W]MWA and FLSA are not identical[.]" *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wash. 2d 291, 298, 996 P.2d 582 (2000). Thus, while authority on the FLSA may provide "helpful guidance" for understanding the WMWA, courts interpreting the WMWA are also "not bound by such authority." *Id.* Any purported overlap between the FLSA and WMWA thus does not determine the question before the Court: whether the WMWA permits employees to waive their right to overtime pay via a private settlement agreement.

Plaintiff cites no other authority in support of its assertion that Washington state law prohibits waiver of WMWA rights by contract. *See generally* Dkt. # 20. In contrast, Defendant

cites multiple examples of Washington courts upholding private settlements of wage claims.[22]
Other opinions by Washington courts likewise support the proposition that WMWA claims can
be released via private settlement agreements.[23]  The Court thus cannot conclude as a matter of
law that Washington state law categorically prohibits waiver of rights under the WMWA.

The Court also cannot conclude that the Agreement's release of Plaintiff's WMWA
claims is void for public policy.  In Washington, "[a] contract provision is void as contrary to
public policy if it seriously offends law or public policy."  *Keystone Masonry, Inc. v. Garco
Const., Inc.*, 135 Wash. App. 927, 933, 147 P.3d 610 (2006).  But courts "shall not invoke public
policy to override an otherwise proper contract even though its terms may be harsh and its
necessity doubtful."  *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash. 2d 477, 483, 687 P.2d
1139 (1984).  Instead, a contract should be voided only if it can be clearly shown that it tends "to
injure the public health, the public morals, the public confidence in the purity of the
administration of the law, or to undermine that sense of security for individual rights, whether of
personal liberty or of private property, which any citizen ought to feel."  *Id.* (quoting *LaPoint v.
Richards*, 66 Wash. 2d 585, 594–95, 403 P.2d 889 (1965)).

---

[22] *See, e.g.*, *Pugh v. Evergreen Hosp. Med. Ctr.*, 177 Wn. App. 348, 360–61, 311 P.3d 1253
(2013) (holding that the trial court erred in invaliding individual settlement agreements as an illegal
kickback of wages and remanding to the trial court to reinstate the agreements); *Jassmann v. Nw.
Interiors & Design, LLC*, 198 Wn. App. 1025, 2017 WL 1137199, at *2 (2017) (unpublished) (enforcing
settlement agreement in which an employee "waived all claims, including his wage claims"); *Butler v.
Thomsen*, 195 Wn. App. 1054, 2016 WL 4524244, at *2 (2016) (unpublished) (noting that the trial court
granted partial summary judgment to the employer because the employee's wage claims were "released as
a matter of law" by a settlement agreement).
[23] *See, e.g.*, *Lopez Demetrio v. Sakuma Bros. Farms*, 183 Wash. 2d 649, 659, 355 P.3d 258 (2015)
(declining to retroactively apply the newly announced rule on wages given the posture of the case and the
existence of a "settlement agreement releasing the [employees'] claims for retrospective relief"); *Turner
v. Vulcan, Inc.*, 190 Wash. App. 1048, 2015 WL 6684259, at *13 (2015) (affirming the trial court's order
affirming an arbitrator's award, where the trial court's decision was based in part on the validity of a
contractual release of the employee's WMWA claims).

As "[p]ublic policy is not a precisely defined term," *see Brown v. Snohomish Cnty.*
*Physicians Corp.*, 120 Wash. 2d 747, 753, 845 P.2d 334 (1993), Washington courts are
instructed to consider the "*Wagenblast* factors" when determining whether a contracted release
violates public policy. *See Chauvlier v. Booth Creek Ski Holdings, Inc.*, 109 Wash. App. 334,
343, 35 P.3d 383 (2001) (citing *Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 110 Wash.
2d 845, 852–56, 758 P.2d 968 (1988)). Per *Wagenblast*,

> the enforceability of a release depends on whether: (1) the agreement concerns an
> endeavor of a type thought suitable for public regulation; (2) the party seeking to
> enforce the release is engaged in performing an important public service, often one
> of practical necessity; (3) the party provides the service to any member of the
> public, or to any member falling within established standards; (4) the party seeking
> to invoke the release has control over the person or property of the party seeking
> the service; (5) there is a decisive inequality of bargaining power between the
> parties; and (6) the release is a standardized adhesion contract.

*Id*. Although this list is nonexclusive, and not all six characteristics are required, the more "that
appear in a given exculpatory agreement case, the more likely the agreement is to be declared
invalid on public policy grounds." *Id.* at 852.

Here, Plaintiff argues that all six *Wagenblast* factors support voiding the Agreement for
public policy. The Court disagrees. Although the Court acknowledges that, as a pharmaceutical
company, Defendant is heavily regulated by Washington law and performs important services
for the public, it does not find that the Agreement concerns the pharmaceutical business. Instead,
it concludes that the "endeavor" at issue in the contract is Plaintiff's private employment with
Defendant. Under this understanding, the first, fifth, and sixth *Wagenblast* factors appear to
favor Plaintiff, as employment arrangements are of a type thought suitable for public regulation,
there is likely an inequality of bargaining power between the parties, and the Agreement appears
to be a standardized adhesion contract. *See id.* The other three factors, however, appear to favor
Defendant: Defendant is not engaged in performing an important public service, no service is

provided to any member of the public, and Defendant does not have control over Plaintiff.  As only three of the six factors favor Plaintiff, the Court cannot conclude that the Agreement is void for public policy based on *Wagenblast*.

The Court also finds no other strong public policy justification for invalidating the release provision of the Agreement.  Although the Court acknowledges that Washington has a general public policy of protecting the rights of employees,[24] Plaintiff cites no authority that would suggest that this policy is "seriously offend[ed]" by private settlements of wage claims.  *See Keystone*, 135 Wash. App. at 933.  In fact, Plaintiff's only cited case that involves a private employment contract seems to suggest that such agreements are not connected to the public good and therefore should not be voided for public policy.  *See Edenholm v. Flytrap Network Sec., Inc.*, 141 Wash. App. 1011, 2007 WL 3053652, at *5 (2007) (unpublished).

The Court also believes that invalidating the Agreement would violate other public policies, such as Washington's preference for allowing parties to privately settle their claims when possible.  *See, e.g.*, *Haller v. Wallis*, 89 Wash. 2d 539, 544, 573 P.2d 1302 (1978) ("The law favors settlements, and consequently it must also favor their finality."); *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wash. 2d 178, 187, 840 P.2d 851 (1992) (The law "favors private settlement of disputes. Releases are therefore given great weight to support the finality of those settlements.").  The Court thus declines to invalidate the Agreement on public policy grounds.

As the Court finds no basis to invalidate the Agreement's waiver of Plaintiff's claims under state law, and it is undisputed that Plaintiff's WMWA claim is covered by the Agreement, the Court concludes that there is no genuine dispute as to any material fact that Plaintiff's

---

[24] *See, e.g.*, *Drinkwitz*, 140 Wash. 2d at 300 (Washington has a "long and proud history of being a pioneer in the protection of employee rights."); *Pellino v. Brink's Inc.*, 164 Wash. App. 668, 684, 267 P.3d 383 (2011) ("Remedial statutes protecting employee rights must be liberally construed.").

1   WMWA claim is barred.  It thus GRANTS Defendant summary judgment and dismisses Count

2   II (Failure to Pay Overtime Under the WMWA).

3        3.      Plaintiff's Claims under the WWRA and WIWA

4        Defendant contends that Plaintiff's WWRA and WIWA claims are barred, as the

5   Agreement validly released all his claims for wages, compensation, or damages under state law,

6   including his claims that Defendant willfully withheld earned wages under the WWRA and

7   failed to provide bona fide meal and rest periods under the WIWA.  *See* Dkt. ## 16 at 5; 21 at 3.

8   Plaintiff's sole response is that such claims are not barred, as the Agreement is void for public

9   policy and is therefore invalid.  Dkt. # 20 at 24.  But as discussed in part III.B(2), the Agreement

10  is not void for public policy.  And it is undisputed that Plaintiff's WWRA and WIWA claims are

11  covered by this clause.  *See generally* Dkt. ## 16 & 20.  The Court thus concludes that there is no

12  genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law

13  on Plaintiff's WWRA and WIWA claims.  Accordingly, it GRANTS Defendant summary

14  judgment and dismisses Count III (Willfully Withholding Earned Wages Under the WWRA) and

15  Count IV (Failure to Provide Bona Fide Meal and Rest Periods Under the WIWA).

16       4.      Plaintiff's Class and Collective Action Claims

17       Defendant contends that because Plaintiff released all individual claims against

18  Defendant, Plaintiff lacks standing to pursue any of the putative class and collective action

19  claims asserted in the Complaint.  Dkt. # 16 at 5.  Plaintiff does not oppose this general

20  proposition—that a party who lacks an individual claim cannot represent a class of others who

21  have such a claim.  *See generally* Dkt. # 20; *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*,

22  350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f [the plaintiff] has no [individual] claim, [they] cannot

23  represent others who may have such a claim, and [their] bid to serve as a class representative

24  must fail.").  Rather, Plaintiff argues that he has standing to bring his collective action and

putative class claims because his FLSA and state-law claims "survive" Defendant's Motion for

Summary Judgment. *See id.* at 22.

　　　But as discussed in part III.B(1)–(3) above, Plaintiff's individual claims do not survive

Defendant's Motion.  Accordingly, the Court concludes that there is no genuine dispute as to any

material fact that Plaintiff lacks standing to bring any of the claims asserted in the Complaint on

behalf of other employees, and Defendant is entitled to judgment as a matter of law on such

claims.  The Court thus GRANTS Defendant summary judgment and dismisses Plaintiff's

putative class and collective action claims.

# IV
## CONCLUSION

　　　For these reasons, the Court:

(1) GRANTS Defendant's Motion for Summary Judgment (Dkt. # 16).

(2) DISMISSES Plaintiff's Complaint (Dkt. # 1) and all claims therein.  Plaintiff's

　　　individual claims are dismissed with prejudice.  Plaintiff's putative class and

　　　collective action claims are dismissed without prejudice.

　　　Dated this 5th day of February, 2026.

John H. Chun
United States District Judge

ORDER - 23